## Dungan's Appeal.

1. Taxes which are a lien upon land will be entitled to be paid out of the proceeds of a sheriff's sale of an interest in the land, although the person whose title is sold never held title to the land in his own name, and the title, both legal and equitable, at the time of the sale, was in a third person.

2. A judgment obtained against a debtor, after he has conveyed land in fraud of creditors, only binds the title of the fraudulent grantee, and a sale thereunder does not discharge prior liens.

January 21st 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. WOODWARD, J., absent.

Appeal from the Court of Common Pleas, No. 1, of *Philadelphia county*: Of July Term 1878, No. 24.

Appeal of J. Dyer Dungan from the decree of the court sustaining the exceptions to the report of the auditor appointed to distribute the proceeds of the sheriff's sale of certain real estate sold under a judgment obtained by Dungan against George Mountjoy.

The judgment of Dungan was obtained September 6th 1875, for $893.76. On February 3d 1877 a writ of fieri facias was issued, and levy made on eleven houses as the property of said Mountjoy. March 13th 1877, a writ of venditioni exponas was issued, under which the said property was sold, on April 2d 1877, to Levi Harring, for $900, which money was paid into court for distribution. Before the auditor the proceeds were claimed by the execution-creditor, and by the city of Philadelphia for the current taxes for the year 1877. Levi Harring also appeared before the auditor and claimed to have the proceeds applied to the payment of the taxes.

The admitted facts found by the auditor are as follows:

On June 19th 1876, the premises were conveyed by Joseph Singerly to one George G. Mann, in pursuance of a verbal agreement between Mann and George Mountjoy, the defendant in the execution. Mountjoy was insolvent at the time, and had judgments recorded against him to a large amount. Mann was named by Mountjoy as the person to take the title, and who would execute the mortgages for the purchase-money and advances. Mountjoy was to have the net profit of the transaction, and Mann had no interest, except as a trustee or depositary of the legal title for Mountjoy. The operation subsequently broke down, and all hope of profit was abandoned, when, on December 29th 1876, Mann, with the consent of Mountjoy, and at the request of Singerly, conveyed the premises to Levi Harring, who subsequently purchased at the sheriff's sale. The auditor found as a fact that George Mountjoy (the defendant in the execution) had no interest whatever in the premises, legal or equitable, at the time of the issuing of the execution, or at the time the taxes were assessed against the property, or at the date of the sheriff's sale, and awarded the fund to the execution-creditor.

[Dungan's Appeal.]

Exceptions were filed by the City of Philadelphia and by Levi Harring, which were sustained by the court, and the fund was awarded to the city on account of the taxes for the year 1877.

This action of the court was assigned as error.

*F. F. Brightly* and *Pierce Archer, Jr.*, for appellant.—As the title to the real estate was not in Mountjoy at the time of the sale, the taxes were not discharged, and therefore could not be paid out of the fund in court, and it must go to the execution-creditor: Byrod's Appeal, 7 Casey 241; Fisher's Appeal, 9 Id. 294; Mix *v.* Ackla, 7 Watts 316; Fisher *v.* Lyle, 8 Phila. 1.

*Christian Kneass* and *E. Spencer Miller*, for appellees.—Where a debtor conveys land in fraud of creditors, a judgment subsequently obtained against him only binds the title of the grantee, and a sale under it does not discharge prior liens: Hoffman's Appeal, 8 Wright 95; Jacoby's Appeal, 17 P. F. Smith 434.

The lien for taxes, unlike that of a judgment, is not against any one specific title to or interest in land, but is against the land itself, and against every interest in said title to it, whether legal or equitable: Vanarsdalen's Appeal, 3 W. N. C. 463.

Mr. Justice MERCUR delivered the opinion of the court, May 5th 1879.

The fund in contention was produced by a sheriff's sale of the real estate of George Mountjoy. He never held a legal title to the lands, but acquired an equitable interest under these circumstances. He was insolvent, and judgments to a large amount were standing against him. Singerly owned the lands now in question, and houses were in process of erection on them. It was verbally agreed between Singerly and Mountjoy, that the former should convey the lands to one Mann, who should execute mortgages thereon to secure the price or value thereof, and the advances; and that Mountjoy should erect buildings thereon and sell them, and have the net profits, after paying the price or value of the lands, and advances. The conveyance was made and the mortgages executed under this agreement. Mann had no interest other than as trustee of the legal title for the use of Mountjoy. The purpose was to enable the latter to realize something out of the transaction. His enterprise proved a failure. He gave up all hope of realizing a profit. On the 29th December 1876, by consent of Mountjoy, and request of Singerly, Mann conveyed the lands to Harring. It does not appear that Harring had any notice of Mountjoy's interest in the premises.

The judgment on which the sale was made was recovered against Mountjoy before he had any interest in the land, and was not revived. In February 1877, execution issued thereon, the land

was levied on, and in April following it was sold to said Harring. The taxes for 1877 being unpaid, the city of Philadelphia claimed them out of the proceeds of the sale, and the appellant claimed the proceeds should be applied on the judgment in his favor, on which the sale was made. The court below decreed the fund to the payment of the taxes, from which this appeal was taken.

At the time of the conveyance to Harring, the appellant had no lien which could be enforced against a good faith purchaser. The lien of the levy attached after that conveyance. The object of the sheriff's sale, when the title was thus in Harring, was manifestly with the intention of questioning the good faith of his purchase. As he became the purchaser at the sheriff's sale, his title then became undoubted.

It is true, it has frequently been held that a sheriff's sale made by virtue of a lien acquired after a conveyance, is the means of vesting in the purchaser the right which a creditor has to attack the good faith of the prior conveyance, but has no effect on undisputed liens existing prior to the conveyance sought to be impeached: Byrod's Appeal, 7 Casey 241; Fisher's Appeal, 9 Id. 294; Hoffman's Appeal, 8 Wright 95. It therefore follows, that the fund raised by such a sale must be applied on liens which attached after the conveyance.

Under the Act of Assembly of 3d February 1824, all taxes which may be lawfully assessed on real estate situate in Philadelphia are declared to be a lien on the said real estate, and "said lien shall have priority to, and shall be fully paid and satisfied before any recognisance, mortgage, judgment, debt, obligation or responsibility." This was so far modified by Act of 11th April 1835, as not to deprive a first mortgage of the benefit of its primary lien, nor cause it to be discharged by a sheriff's sale under a junior encumbrance.

The Act of 1824 does not, in express terms, declare the precise time when the lien for taxes shall attach; yet we think the clear meaning is, as soon as they are "lawfully imposed or assessed." Nothing in the act indicates that the lien shall be postponed to any future time. As soon as the liability of the land for the specific tax arises the lien must attach. Hence it was said in Camac *v.* Beatty, 5 Phila. 129, "we are clearly of the opinion that the tax is a lien from the time of its assessment." While this was said by the judge of an inferior court, yet it is entitled to great consideration. Thus, it appears, that the lien of the city for taxes, as well as the lien of the appellant's execution, both attached after the conveyance to Harring. If the lien of the taxes attached at the beginning of the year for which they were laid, they were prior in time to the levy. If prior in time, but after the conveyance to Harring, the lien was prior to the levy on the interest sold by the sheriff. The tax lien was the first after the alleged fraudulent deed to Harring. If

so, it was entitled to be paid before the judgment of the appellant. The fact that his judgment was used as the instrument to effect the sale did not give him a preference over prior liens on the title or interest which he sold: Hoffman's Appeal, 8 Wright 95; Jacoby's Appeal, 17 P. F. Smith 434.

If, in fact, the lien of the taxes attached after the lien acquired by virtue of the levy on the execution, yet the Act of Assembly makes the taxes a preferred lien, and directs them to be paid before the judgment of the execution-creditor. If the taxes were a lien at the time of sale their payment is preferred.

The lien of the taxes was not restricted to the particular interest or title of any one person, but was a charge on the whole land. The lien was therefore on all the interest or title sold by the sheriff. The fact that an equitable interest only was sold, did not prevent the city from claiming the taxes laid on the whole estate, out of the proceeds of the sheriff's sale: Vanarsdalen's Appeal, 3 W. N. C. 463.

The decree of the court below is affirmed, and the appeal is dismissed at the costs of the appellant.