MATTHEW HENDERSON v. A. P. HENDERSON.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS
OF DELAWARE COUNTY.

Argued February 10, 1890—Decided March 24, 1890.
[To be reported.]

1. When land has been devised to an executor, with an absolute direction
to sell it and distribute the proceeds among legatees, the legatees may
formally, or by some decisive act, elect to take the land itself in place
of its proceeds, whereby they will acquire an equitable title to the land;
but prior to the act of election they have no estate or title which can be
the subject of a judgment lien.

2. When the legatees under such a will have elected to take the land in
specie, agreeing upon a partition thereof among them, and one of them,
to prevent his creditors from levying on it, has caused his purpart to
be conveyed to his wife instead of to himself, the conveyance made to
the wife has the same operation and effect, as a fraudulent conveyance,
as if made by the husband to her.

3. When a creditor, whom such a conveyance tends to defraud, sells the
land conveyed as the property of the husband, the fact that his judgment
is used as the instrument of sale will not give him a preference over
prior liens; it is the debtor's estate, whatever it may be, which is sold,
and the liens upon it, which attached after the fraudulent grant was
made, are to be paid in their order.

4. The distribution of the proceeds of such sale is in no way affected by
the fact that, prior to the election to take the land, the defendant as-
signed his interest in the fund to arise from the sale directed by the
will, as security for the debt to collect which the sheriff's sale was after-
wards made; and any remedy the assignee may have, upon the ground
that his money formed the consideration of the conveyance, would be
in another form.

5. If a judgment, recovered subsequent to a fraudulent conveyance by the
debtor, is based in part upon indebtedness contracted prior, and in part
upon indebtedness contracted subsequent to the making of that convey-
ance, such judgment is a lien upon the estate of the fraudulent grantor,
but only to the extent of the indebtedness antedating the conveyance.

6. Specific instructions in writing to levy on certain real estate described,
delivered to a sheriff with an execution, are not equivalent to a levy,
and do not justify the insertion of the date of such delivery in the sher-
iff's return as the date of the levy; nor is such a return conclusive in
a distribution by an auditor if the date were inserted in it after the writ
was returned, and testimony is admissible before the auditor to show
the fact.

Statement of Facts.

No. 125 July Term 1889, Sup. Ct.; court below, number and term not given.

The sheriff having paid into court a fund arising from the sale of certain real estate as the property of Alvin P. Henderson, the court below appointed *Mr. George E. Darlington*, auditor, to distribute said fund.

The auditor reported, finding the following facts: On December 26, 1882, the will of Robert D. Henderson, deceased, was duly admitted to probate and letters testamentary issued to William B. Broomall, the executor thereby appointed. By said will the testator devised certain real estate to his executor, in trust to sell the same, and bequeathed the proceeds of such sale to all his children, in equal shares. Among these children was Alvin P. Henderson, the defendant.

On April 23, 1885, Alvin P. Henderson gave to Matthew Henderson a judgment bond in the penal sum of $3,000, conditioned for the protection of Matthew Henderson against his indorsements of Alvin P. Henderson's paper. At the same time, Alvin P. Henderson assigned to Matthew Henderson, as a further indemnity against such indorsements, his, Alvin's, interest in the proceeds of the real estate devised by the will of his father to the executor for sale and distribution as aforesaid. On April 24, 1885, judgment was entered upon the bond in favor of Matthew Henderson, for $1,500.

Some time after the entry of that judgment, the legatees under the will agreed among themselves to take as real estate and divide among them the land which the testator had directed to be sold. Three of the legatees were minors, having Matthew Henderson as their guardian, and two others had made assignments for the benefit of creditors. In view of these facts, and in order to protect the guardian and assignees, it was agreed that the executor should make sale of the land under the power of sale conferred by the will, and that Hugh Hazlett and Mary M. Henderson should purchase it and make the division among the legatees. This arrangement was carried out. The executor sold the land at public sale to Hugh Hazlett and Mary M. Henderson for the price of $25,000, and

on December 2, 1887, conveyed the title to them. No money was paid to the executor upon this sale, except a sufficient sum to discharge a mortgage which stood against the property, each legatee raising a proportionate part thereof.

The sale having been made, the legatees met at the office of the executor and agreed upon a division of the land. The property had previously been laid off into building lots. Alvin P. Henderson selected as his portion twenty-eight of the lots, and by his direction Hugh Hazlett and Mary M. Henderson conveyed the same, by deed dated December 5, 1887, to Lizzie C. Henderson, the wife of Alvin. She was not present at the time the division was agreed on, nor at the time of making the deed to her, and had no one there representing her. She paid no consideration for the lots conveyed to her, and never saw the deed for them until long after it was made. She testified, however, that she had been informed by her husband that he was going to have the deed made to her, and she understood that this would make them safe, and that no one could take the lots from them on account of her husband's indebtedness.

On December 9, 1887, the guardian of the minor legatees, the assignees of the two that were insolvent, and all the other legatees including Alvin P. Henderson, executed a release to the executor, acknowledging payment of their distributive shares of the estate and discharging him from all liabilities in respect thereof.

At the time of the settlement with and among the legatees Matthew Henderson did not make any claim upon the executor under the assignment which he had received from Alvin P. Henderson. He knew of the public sale by the executor and the division of the property among the legatees, but did not then know that Alvin's share was being conveyed to the latter's wife.

On August 3, 1888, Alvin P. Henderson gave to James M. Henderson a judgment note for $2,000, upon which judgment was entered on August 6, 1888, to the use of George K. Cross, trustee. This judgment was given in trust to secure an indebtedness to James M. Henderson in the sum of $583, and indebtedness in other sums to other persons. A part of the indebtedness so secured to James M. Henderson was contracted prior to the agreement among the legatees of Robert D. Hen-

derson for the division of the testator's real estate among themselves, and a part of it was contracted subsequent to the conveyance from Hugh Hazlett and Mary M. Henderson to Lizzie C. Henderson. All other indebtedness secured by the judgment and remaining unpaid at the time of the audit, was contracted after the date of that deed. James M. Henderson testified before the auditor that he knew of the conveyance to Lizzie Henderson, at the time it was made.

On the same day that the judgment in favor of James M. Henderson for use of George K. Cross was entered, August 6, 1888, Matthew Henderson issued a writ of fieri facias upon his judgment, which had not been revived, attaching to the writ a direction to the sheriff to levy on and condemn the twenty-eight lots above mentioned. The return to this writ, as exhibited by the record at the time of the audit, set out a levy upon said real estate on August 6, 1888. In point of fact, however, as was shown by parol testimony heard by the auditor, the levy was not made until August 10, 1888, and the words "on August 6, 1888," were not in the return as originally made, but were added to it by the sheriff about two weeks after the writ had been returned, at the instance of the plaintiff's attorney, who understood that the levy had been made on that date. In pursuance of this levy the real estate was duly condemned and was sold under a writ of venditioni exponas, by which sale the fund for distribution was produced. Matthew Henderson and George K. Cross each claimed priority of lien thereon.

The auditor reported his opinion upon the facts, in part, as follows:

The devise of the real estate by the will of Robert P. Henderson to his executor to sell, converted the real estate into personalty in passing to his children, so that the judgments entered against Alvin P. Henderson, before the title by deed was made to his wife, would not bind the land. Whatever title he had in the land sold by the sheriff's sale was therefore first bound by the judgments of George K. Cross, entered April 30, 1888, and of James M. Henderson to the use of George K. Cross, entered August 6, 1888; but the judgment entered April 30, 1888, has been satisfied and is out of the way.

Auditor's Report.

There was no fraudulent conveyance of land here as against creditors. The only question appears to be whether the land conveyed to Lizzie C. Henderson was not purchased by her by her husband's money, and whether she did not hold the title for him and subject to her husband's debts.   But whatever interest and title he had in the land he certainly got through that conveyance to his wife, for all his prior interest in the lands, if any, was sold by the executor's sale.

The sheriff in this case sold all the right, title and interest of Alvin P. Henderson in the land, and the moneys for distribution are the proceeds of that sale.   The question is, who is entitled to it?

The assignment to Matthew Henderson, Sr., was made on April 23, 1885, and would only convey the share of Alvin P. Henderson in the proceeds of the executor's sale of the real estate of Robert D. Henderson.   Matthew Henderson could not in any event claim the proceeds of the sheriff's sale under it, for if he had any title to the land under it, the land is still subject to it, as the sheriff's sale could not divest it.   It is well settled that without a levy a writ of fieri facias creates no lien upon real estate independent of the judgment which it executes: Wilson's App., 90 Pa. 370; so that the judgment of James M. Henderson to the use of George K. Cross having been entered before the day the levy under the fieri facias on the judgment of Matthew Henderson, Sr., was made, had priority of lien on all the right, title and interest of Alvin P. Henderson in the land.

The return of the sheriff to the fieri facias that the levy was made on August 6, 1888, the fact being that the levy was not made until some days after that date, cannot give priority to the execution, and is not conclusive as to the date of the levy: Wilson's App., 13 Pa. 427.   The sale under the execution divested whatever title or interest Alvin P. Henderson had in the land, and the fund raised by the sale must go to the first judgment lien entered against him after he acquired any title in the land, which appears to be that of James M. Henderson to the use of George K. Cross: See Fisher's App., 33 Pa. 294.

—The auditor accordingly reported a schedule of distribution by which the whole of the fund remaining after deducting costs and tax liens, was awarded upon the James M. Henderson judgment.

To the foregoing report, Matthew Henderson excepted, alleging that the auditor erred, inter alia:

3. In not reporting that the conveyance to Lizzie C. Henderson was fraudulent and void as to the debt of the exceptant, and valid as to the greater part of the judgment of James M. Henderson.[1]

5. In distributing the proceeds of the sale to the James M. Henderson judgment, and in not distributing the same to the exceptant.[2]

These exceptions, after argument, were overruled by the court, CLAYTON, P. J., in the following opinion and decree:

.This is a contest between two judgment creditors for the fund raised by a sheriff's sale of the lands of Alvin P. Henderson. The auditor finds, as a fact, that the deed to the defendant's wife was not fraudulent as to his creditors, but that, as the purchase was made with his money, she is virtually his trustee, and the land, so far as his creditors are concerned, still belonged to him when levied upon. The only question in this case, therefore, is one of priority of lien.

A. P. Henderson, as whose property the land was sold, confessed a judgment to James M. Henderson, August 6, 1888. Matthew Henderson had a judgment against him before he acquired title, which, of course, was no lien on after-acquired property. Matthew, however, issued an execution on his judgment, which came to the sheriff's hands August 6, at 2.50 P. M. The sheriff's return to this fieri facias shows that on August 6, 1888, he levied upon the land in question. If this return was true, both judgments would, perhaps,.be entitled to participate in the distribution, but the auditor finds as a fact that the sheriff did not levy upon the land until August 10th, full four days after the commencement of the lien of James M. Henderson's judgment. The sheriff's return is only conclusive between the parties to the action in which it is made. In a collateral issue between two creditors to try their rights to the proceeds of a sheriff's sale, the return is but prima facie evidence: Lowry v. Coulter, 9 Pa. 349.

This is decisive of the issue between the parties. The oldest lien must take the money. Exceptions dismissed and report confirmed.

Thereupon Matthew Henderson took this appeal, assigning for error:

1, 2. The dismissal of the exceptions to the auditor's report.[1][2]

3. The confirmation of "the report of the auditor, admitting parol testimony to contradict the sheriff's return to the writ of fieri facias."

*Mr. W. I. Schaffer* (with him *Mr. W. B. Broomall*), for the appellant:

1. That the conveyance to Lizzie C. Henderson was intended to hinder and delay creditors, is established beyond any doubt by the testimony of herself. Such a conveyance is fraudulent and void as to the creditors intended to be hindered: Zerbe v. Miller, 16 Pa. 488. It was not fraudulent as to creditors who knew of or assented to it at the time it was made: Zuver v. Clark, 104 Pa. 222; and therefore, as James M. Henderson knew of it, there could be no intent to defraud him: Monroe v. Smith, 79 Pa. 459. A part of the indebtedness to him, and all of that to the other beneficiaries in the judgment given him, were contracted after the conveyance was made, and as to such the conveyance was unquestionably valid: Harlan v. Maglaughlin, 90 Pa. 293; Snyder v. Christ, 39 Pa. 499; Monroe v. Smith, 79 Pa. 459; Wilson v. Silkman, 97 Pa. 509; Gault v. Saffin, 44 Pa. 307. Matthew Henderson appears to be the only creditor intended to be defrauded, and he is therefore the only one who can avoid the sale: Zuver v. Clark, 104 Pa. 222.

2. Liens acquired after a fraudulent grant, and as to which the grant is a fraud, are not liens against the same title as judgments entered against the grantor prior to the conveyance. By a sale upon one of the former class, the absolute estate in the land passes; whereas, under one of the latter, only the right to avoid the fraudulent conveyance is sold; and in either case the proceeds of the sale will be distributed only among judgments of the same class, and having a lien on the same estate or interest as the judgment making the sale: Fisher's App., 33 Pa. 294; Hoffman's App., 44 Pa. 95; Byrod's App., 31 Pa. 241; Patterson's Est., 25 Pa. 71; Vierheller's App., 24 Pa. 105; Haak's App., 100 Pa. 59; Dungan's App., 88 Pa. 414; Beekman's App., 38 Pa. 385. On the same principle,

the conclusion is inevitable that such a judgment as that of James M. Henderson, as to which the conveyance was not fraudulent, and which therefore had no lien on the title sold, was a lien on nothing, could sell nothing but moonshine, was powerless to raise this fund, and is not entitled to participate in this distribution.

3. A record cannot be contradicted by parol testimony: Hoffman v. Coster, 2 Wh. 453; Graham v. Smith, 25 Pa. 323. The return of a levy by a sheriff is conclusive, and is not open to impeachment or contradiction in a contest between creditors: McClenahan v. Humes, 25 Pa. 85; Hoffman v. Danner, 14 Pa. 28; Flick v. Troxsell, 7 W. & S. 65; Mentz v. Hamman, 5 Wh. 149; Knowles v. Lord, 4 Wh. 499; Blythe v. Richards, 10 S. & R. 261; Diller v. Roberts, 13 S. & R. 60; Lowry v. Coulter, 9 Pa. 349; Paxson's App., 49 Pa. 195; Paxton v. Steckel, 2 Pa. 93. And it was clear error to confirm the action of the auditor in permitting the date of levy, as given in the return, to be contradicted. Rights have vested in the purchase of the property on the faith of the return. If it can be contradicted in this particular, could not the sheriff counteract the fact of the levy entirely, and thus defeat the rights of the purchasers? But the levy is complete when the writ comes to the sheriff's hands, if it is accompanied as in this case with instructions to levy on particularly described real estate, inasmuch as the levy need not be made in view of the property, and all that is necessary is a description of the land: Titusville etc. Works' App., 77 Pa. 103; Cowden v. Brady, 8 S. & R. 504; 1 Trickett on Liens, 368; 1 Tr. & H. Pr., 976.

*Mr. Isaac Johnson,* for the appellees:

1. That there was a fraudulent conveyance to Lizzie C. Henderson, has been negatived by the auditor's finding. But if the conveyance were fraudulent as to Matthew Henderson, it was equally so as to the portion of the James M. Henderson judgment representing indebtedness incurred prior thereto, and the fact that he did not object to the conveyance at the time it was made, does not estop him from taking advantage of its fraudulent character here. The question of fraud however, is immaterial. By the will of Robert D. Henderson there was an equitable conversion of the lots into money: Morrow v.

Arguments.

Brenizer, 2 R. 185; Dundas's App., 64 Pa. 330; Hannah v. Swarner, 3 W. & S. 230. Not until December 5, 1887, when they were conveyed to his wife, did Alvin P. Henderson have any interest in the lots as such. The conveyance to his wife gave him an interest, because it was paid for with his money.

2. Land devised to executors to sell may be taken by legatees, and after their election so to do, judgments against them will bind the land: Stuck v. Mackey, 4 W. & S. 196; Willing v. Peters, 7 Pa. 287; Simpson v. Kelso, 8 W. 247. That the legal title was placed in the wife makes no difference; judgments bind equitable estates and interests, and take rank against the same according to dates: Carkhuff v. Anderson, 3 Binn. 5; Carneghan v. Brewster, 2 Pa. 41; Wilson v. Stoxe, 10 W. 434. When, therefore, our judgment was entered on August 6, 1888, it bound as a lien the equitable title vested in the defendant. The levy made by Matthew Henderson four days later, bound precisely the same interest, but was necessarily subordinate as a lien to our judgment. That interest is what was sold on the execution, and the proceeds of the sale are to be applied to the liens upon it, in the order in which they attached: Hoffman's App., 44 Pa. 95; Jacoby's App., 67 Pa. 434; Dungan's App., 88 Pa. 414; Beekman's App., 38 Pa. 385.

3. The lien of Matthew Henderson's fieri facias did not attach until the date of levy, August 10, 1888. A writ of that kind creates no lien upon real estate, independent of the judgment which it executes, until levy: Wilson's App., 90 Pa. 370. The mere handing to the sheriff with the writ a description of the land he is directed to levy on, will not constitute a levy without some act on the sheriff's part. It may not be necessary for him to go upon the land to make the levy, but he must make it by some act or declaration. The testimony to show the true date of the levy was admissible. The words "August 6, 1888," were not a part of the return; after he had made it, the sheriff had no right to amend by adding those words, without an allowance of court: Lowry v. Coulter, 9 Pa. 353. But, even if they had been in the return as made originally, they would not conclude us, we being strangers to that writ: Paxson's App., 49 Pa. 195; Lowry v. Coulter, supra; nor would they be evidence at all against us: Bogue's App., 83 Pr. 101.

OPINION, MR. JUSTICE CLARK:

By the last will and testament of Robert D. Henderson, deceased, dated November 3, 1880, his real estate was devised to William B. Broomall, the executor, to be by him sold, and the proceeds thereof, together with the rest and remainder of the testator's estate, divided among his children in equal shares. The power to sell is not contingent or discretionary; it is absolute and imperative. The provision for his children is a bequest of the proceeds, not a devise of the land, the title to which was in his executor. The devise to his executor, with this power and direction, was therefore an equitable conversion of the realty into personalty.

It was competent, however, for the heirs, formally, or by some decisive act to that effect, to take the land in lieu of the money. Not that the heirs " had any equitable interest in the land," as we said in Mellon v. Reed, 123 Pa. 17, " but, being the only parties beneficially interested, they had the power to control the event. In such a case, the heirs take title, not by the will, but by their own act. Their election to take the land is an appropriation of their interests under the will to the acquisition of the land, as upon a purchase, and an equitable estate or title is thereby created in them, which chancery will execute by compelling a conveyance. But until the act of election the heirs have no estate or title which would be the proper subject of a lien either by judgment or by mortgage, or which could be taken in execution." See, also, Roland v. Miller, 100 Pa. 50, and cases there cited.

On April 24, 1885, when Matthew Henderson entered his judgment, the heirs had not yet made any formal election, nor had they done any decisive act equivalent thereto; his judgment, therefore, was not a lien upon the land at the time of its entry. It was not until some time about December 2, 1887, that any steps were taken to this end. On that day the executor sold the entire real estate at a public sale, to Hugh Hazlett and Mary M. Henderson, for $25,000, they being the highest and best bidders, and, on December 5th following, made, executed, and delivered a conveyance to the purchasers thereof in due form. The property prior to this had been laid out in building lots, and the sale would appear to have been made with a view to a partition or division of these lots among the

heirs. Some of the heirs, it seems, were minors, and some had assigned for creditors, and were therefore disqualified from exercising the right of election; and the sale was resorted to in order to put the title in such shape that partition could be made. There is no allegation that the sale was not in due form or in good faith, or that the price was inadequate; it was a public sale, made upon due notice, and was open to all bidders. Matthew Henderson was not present. He knew Broomall had the power to sell, and that he actually did sell the land, and has made no objection. It is true it was made with a view to partition, and that the purchase money was paid to the executor by the releases of the several heirs, who accepted portions of the land in lieu of their shares of the money; but it seems to be conceded that the trustee acted in good faith, and we cannot see upon what ground the validity of the sale can be impeached; indeed, the present proceeding is in affirmance of the sale, and we do not know that its validity is in any way called in question.

It appears, however, that Alvin P. Henderson's share of the lots was on December 5, 1887, conveyed by the purchasers at the executor's sale, not to him, but to his wife, Lizzie C. Henderson, who says that she was informed by her husband he would have the lots conveyed to her, but she freely admits that she paid no money and gave no consideration therefor, that she was not present when the deed was made, nor had she any one to represent her. She says she understood from her husband that this would make them safe, and that no one could take the lots for his debts.

On August 6, 1888, a fieri facias was issued on the Matthew Henderson judgment, and the sheriff was directed to levy upon the right, title, interest, and claim of Alvin P. Henderson in the lots conveyed to his wife; on the same day, the judgment of James M. Henderson for $2,000 was entered. This judgment, given in trust for certain of the defendant's creditors, was subsequently marked to the use of George K. Cross, and for convenience we will refer to it as the "Cross judgment." It was entered after the conveyance to Lizzie C. Henderson; and the lien thereof, therefore, attached to whatever interest Alvin P. Henderson may have had therein, if he had any, at the date of its entry. The Matthew Henderson judgment, on the other

hand, having been entered long before the re-conversion of the legacies into land, was not a lien against these lots, except by virtue of the levy.

The sheriff's return, as it now appears upon the writ, is that the levy was made on the same day the writ came into his hands, August 6, 1888, which is the date of the entry of the Cross judgment; but it is shown in the most satisfactory manner, not only by the sheriff himself, but by other witnesses, that the return, as it was in fact made, was without date, and that the date, "August 6, 1888," was afterwards inserted by him, at the instance of the attorney for the writ. That the testimony of the sheriff and of the other witnesses was admissible, in a contested distribution, for this purpose, cannot be doubted; for the purpose was not to contradict the return, but to show what the sheriff's return in fact was; it was not to contradict the record, but to establish it. It must be conceded that after the writ was returned it had passed out of the sheriff's power; his return was then part of the record, and he could neither add to nor subtract from it without leave of the court. This act of the sheriff was wholly without authority, and it was competent for those claiming in this distribution under the Cross judgment to show that the date of the levy was no part of the sheriff's return, but was an unauthorized interference with, and alteration of the record, which could have no force or validity whatever against them. There is a rule of law that the sheriff's return is conclusive in the case in which it is made, and upon privies: Paxson's App., 49 Pa. 195; and that the record of a court of record imports verity, and cannot be contradicted; there is a rule, equally well established, that an instrument under seal cannot be contradicted by the parties, or altered or amended by parol; yet no one has ever doubted that a return, or a record, or any instrument under seal, may be impeached for fraud or forgery; for the fraudulent alteration is no part of the instrument, or of the record, and upon this principle the words added to this return are no part of it, and may be excluded.

The testimony shows that this levy was not made upon August 6, 1888. It is true, specific instructions to the sheriff accompanied the writ, to levy upon certain property particularly described, and it may have been supposed that this was

equivalent to a levy, and justified the insertion of that date; but this was not a levy; it was a mere direction to levy, and no levy was in fact made until August 10, 1888. As the Cross judgment was entered on August 6, 1888, and the levy on the Matthew Henderson judgment was not made for four days later, it follows that, unless some other rule of law or of equity intervenes, the Cross judgment must be taken to have precedence in the distribution.

But it is said that the conveyance to Lizzie C. Henderson was in fraud of the creditors of her husband, and that Matthew Henderson was the particular creditor intended to be defrauded; that the interest or title of Alvin P. Henderson, taken on execution on the Henderson writ, was such interest only as remained in him after the fraudulent conveyance to his wife, and that the sheriff's sale conveyed to the purchaser merely the right to contest her title, as distinguished from the right which would have accrued to a purchaser upon a sale of the absolute estate on a judgment entered before the conveyance; and, to sustain this view, Byrod's App., 31 Pa. 241; Hoffman's App., 44 Pa. 95; Beekman's App., 38 Pa. 385, and that line of cases, are cited. It is contended, further, that the conveyance to Mrs. Henderson was not made in fraud of the Cross judgment; that that judgment was, substantially, for a debt contracted after the fraud was complete, and that James M. Henderson was from the date of the conveyance fully cognizant of the fraud; that, in consequence of this, a sale, if it had been made on that judgment, would not have put the purchaser in a position to contest the fraud, or to raise the fund now for distribution, and that, therefore, the Cross judgment cannot participate in this fund; in other words, that this fund is distributable only to such judgment creditors as the fraudulent conveyance tended to defraud, and the Cross judgment is not one of these.

But the facts assumed by the appellant are not wholly justified by the proofs. A considerable portion of the Cross judgment, it is shown, is for debt contracted before the deed to Lizzie C. Henderson, and the conveyance certainly tended to defraud him to this extent. Nor does it appear that James M. Henderson, or any of the creditors for whose benefit the judgment was taken, had any participation in the fraud, or in any way gave it their approval. Both of these contesting judgments, one, in part at least, by virtue of the entry as a lien, and

the other in consequence of the levy, are liens upon the same interest or estate, and a sale upon either would pass to the purchaser whatever title the defendant had for his creditors, under the conveyance to his wife. If, in this distribution, it had been shown that the plaintiff in the Cross judgment had been a participant in the fraud, he would have been postponed, but the mere fact that the appellant's judgment was used as the instrument of sale will not give him a preference over prior liens. The case upon this branch is ruled by Hoffman's App., supra; Jacoby's App., 67 Pa. 434, and Dungan's App., 88 Pa. 414. In Hoffman's App., supra, it is said that a junior judgment creditor cannot appropriate the whole price to the payment of his judgment, on the ground that he was the instrument to effect the sale; " it is the estate of the debtor," as the court said in that case, " whatever that may be, which is sold at the sheriff's sale, and therefore the liens upon it which attached after the fraudulent grant must be paid in their order."

But the rule, thus generally expressed, has a more restricted operation in cases where the facts are different. In Hoffman's Appeal, all of the judgments, claiming to participate in the fund for distribution, were for debts contracted before the date of the fraudulent conveyance, and were such as the conveyance tended to defraud. It is well settled that a fraudulent conveyance is good between the parties; only persons whom the transaction tended to defraud have standing in court to avoid it; as against all other persons, the deed vests a good title in the grantee. Prior lien creditors, or prior creditors assenting thereto, and subsequent creditors whom the debtor did not intend to defraud, are not defrauded by such a deed, and have no standing to impeach it: Zuver v. Clark, 104 Pa. 222. It follows that the Cross judgment is only entitled to participate in this distribution to the extent to which the transaction tended to defraud the holder of that judgment. To this extent the judgment was a lien upon the fraudulent title of the husband standing in the name of his wife; the residue of the judgment was a lien upon nothing, and is entitled to nothing in this distribution.

As against this partial allowance of the Cross judgment, the argument of the appellees is that this deed is not to be regarded as a fraudulent conveyance; that there was no fraud, and the auditor so found; that the conveyance to Lizzie C. Hen-

derson was in good faith, and the distribution is to be made upon the footing of a trust in her for her husband's pre-existing creditors, no part of the consideration having been paid by her. But this finding of the auditor is clearly erroneous; the avowed and confessed purpose of Alvin P. Henderson and of his wife was to make themselves safe, so that no one could take the lots from them for his indebtedness. The fraud is so palpable and plain, that a further reference to and discussion of the facts is unnecessary.

Nor can the assignment of April 23, 1885, which was given to Matthew Henderson as collateral security for the judgment note, affect this distribution. The fund in court is the proceeds of the sale of the interest or title of Alvin P. Henderson in the real estate in the name of his wife, and it must, of course, be distributed to his lien creditors in the order of their priority. The assignment is good only against the fund in the hands of the executor; it can have no force or effect here. If it be said that it was Matthew Henderson's money, and not the money of Alvin P. Henderson, that formed the consideration of the conveyance, and that a trust resulted to the former, and not to the latter, the remedy was in a different form. This fund arose from the sale of the title and interest, large or small, of Alvin P. Henderson, and must go to his lien creditors in the order of their liens.

In Bailey v. Allegheny N. Bank, 104 Pa. 425, a mortgage executed by one who was only entitled to a share in the proceeds of the land, and not the land itself, was treated as a provisional election on his part to take the land in lieu of the money, contingent upon the agreement of the other heirs uniting therein, and an equitable assignment in the meantime of the interest of the heir as personalty, which after partition attached as a lien to the purpart allotted to the mortgagor in severalty. But that case can have no application here, as neither the assignment nor the judgment could be regarded as a provisional election to take the land; they were both, in terms, to a different effect.

> The decree of the Common Pleas is reversed, and the record is remitted in order that distribution may be made in accordance with this opinion; the appellees to pay the costs of this appeal.