# William Fidler and Justina Fidler, his Wife, for the use of Justina Fidler, *v.* U. F. John, Appellant.

[Marked to be reported.]

*Execution—Sheriff's sale—Smallness of price—Presumption.*

A judgment creditor has a perfectly lawful right to enforce payment of his judgment by execution process, and to get the property of his debtor for just as small a price as he can, if the sheriff's sale therof is public and fair. The smallness of the price realized by the sale does not afford any presumption of a wrongful intent on the part of the purchaser at such a sale.

*Deed—Fraudulent conveyance—Who may avoid it—Judgments—Liens.*

Judgment creditors are not affected by a fraudulent deed made by the debtor after the entry of their judgments, inasmuch as the fraudulent grantee takes title subject to their judgments.

A conveyance intended to defraud creditors is not void, but only voidable by the creditor whom it was intended to defraud, and this does not include prior lien creditors. Such a conveyance changes the title, and after-acquired judgments against the grantor are liens against the title of the fraudulent grantee only, and not against the same title as the prior ones. Such prior liens are not, therefore, affected by sale under a judgment subsequent to the fraudulent sale.

None but a person intended by the parties to a conveyance to be hindered, delayed or defrauded, or holding under such person, for instance, a purchaser at judicial sale in the collection of a debt due such person, can avoid the conveyance; for only as against such person or persons is the deed void under the statute of fraudulent conveyances.

*Deeds—Judgment creditor—Fraudulent conveyance—Execution—Advice of judgment creditor to his debtor to make fraudulent conveyance.*

A judgment creditor cannot lose his honest judgment against his debtor because he advises his debtor to cheat another creditor. If the debtor accepts the advice, and attempts to cheat his creditor, he becomes a party

to the fraud, and cannot set up that fraud even against the man who advised it, so as to take away from him a perfectly valid judgment.

F. and wife brought an action of ejectment against J. to recover land, which at one time was owned by F., against which J. held a valid judgment. F. testified that he was a client of J., and that J. advised him to make a fraudulent conveyance of the land to L., so as to defraud another creditor who was about to take judgment against him. J. denied that he gave such advice. The fraudulent deed was executed. After the fraudulent conveyance, S., the creditor, who, it was alleged, was intended to be defrauded, issued execution and sold the land, bought it in and conveyed the title to L., who conveyed it to F.'s wife. J. subsequently issued execution upon his judgment and bought in the land at sheriff's sale, and secured possession of it. *Held*, (1) that even if J. gave the advice to make the fraudulent deed, such deed did not divest prior liens, and therefore the lien of his judgment was not divested thereby; (2) F.'s conveyance to L., if not fraudulent, was absolutely good against S., and she took no title by her purchase at the sheriff's sale; if fraudulent, she took the title of L. only; in either event it had no effect on the lien of J.'s judgment, so that there was no title in either F. or his wife to set up against J.; (3) that even if the advice as to the fraudulent deed could have the effect claimed for it, the evidence to show that such advice was given was wholly insufficient to move the conscience of a chancellor or to support a verdict in an equitable ejectment; (4) that binding instructions should have been given for the defendant.

Argued May 25, 1896. Appeal, No. 89, July T., 1895, by defendant, from judgment of C. P. Northumberland Co., Feb. T., 1885, No. 42, on verdict for plaintiffs. Before STERRETT, C. J., GREEN, WILLIAMS, DEAN and FELL, JJ. Reversed.

Ejectment for a lot of land in Shamokin borough. Before LYONS, P. J., of the 41st judicial district, specially presiding.

The facts appear by the opinion of the Supreme Court.

The court charged in part as follows :

[But the plaintiffs now allege, in order to avoid this title of U. F. John, that the deed of William Fidler and wife to Michael Lucas, for the consideration of twenty-five hundred dollars ($2,500), dated the 10th of August, 1877, was made for the purpose of defrauding Eva Smink, who had brought suit against William Fidler in the common pleas of Northumberland county, which was to be tried before arbitrators on the 14th day of August, 1877, and that William Fidler, who was then the owner of the land in dispute, acting upon the advice of U. F. John,

who was the attorney in the suit of Eva Smink against him, advised him to make the deed of conveyance, which was made to Michael Lucas on August 10, 1877, for the purpose of defrauding Mrs. Eva Smink out of her money, and for the purpose of casting a cloud upon the title to enable him to buy this property for less than its value. If he did in point of fact so advise William Fidler to make this conveyance, and Justina Fidler had no knowledge of the fraud intended, and this was done not only for the purpose of defrauding Eva Smink, but also for the further purpose of enabling U. F. John, the defendant, to buy this property for less than its value, then his subsequent purchase of the land at sheriff's sale upon his own judgment would vest no title in him, and the plaintiffs would be entitled to recover.] [5]

[The allegation of fraud as alleged here by the plaintiffs is an easy one to make, but the law never presumes fraud. He who alleges it must prove it, although it is sometimes difficult to do. Yet there is not very much in the circumstances of this case which is difficult for you to understand, and we submit it now as a question for you to determine whether or not Mr. John, if he did in point of fact advise the conveyance by Fidler and wife which was made on the 10th of August, 1877, to Michael Lucas, did so for the purpose of defrauding Eva Smink; and whether he did that intending at the same time to enable himself by means of his judgment and his conduct in the premises to obtain title to this land for less than it was worth. If you find that he did then he would be affected by the fraud, unless you find further that Mrs. Fidler was also cognizant of the fact, that she knew the purpose for which it was made and entered into; and that she, as testified to by Mr. Smink, was in conversation with her husband about the matter. If such was the case then I say to you that she cannot set up this fraud to defeat the right of Mr. John to recover. I submit the questions to you to find under all the evidence in the case. If you believe that Mr. John did counsel and advise the making of that deed for the purpose of defrauding Eva Smink, that it was made in pursuance of that counsel and advice; that he intended also to enable himself to gain this property for less than its value, then he would not be in a position to hold that title. On the other

hand, if he did not do it for that purpose he has a valid title, and the verdict ought to be for the defendant.] [6]

Defendant's points and answers thereto among others were as follows:

1. Under all the evidence in the case the verdict must be for the defendant. *Answer:* This we refuse and refer you to the general charge. [7]

5. There is no evidence of any conspiracy between William Fidler and U. F. John to defraud Justina Fidler out of her property, therefore there can be no recovery by the plaintiffs. *Answer:* We refuse so to instruct you and refer you to the evidence in the case and to the instructions given you in the general charge. [10]

Verdict and judgment for plaintiffs.    Defendant appealed.

*Errors assigned* among others were (5, 6, 7, 10) above instructions, quoting them.

*S. P. Wolverton*, with him *C. M. Clement*, for appellant.— Lien creditors are not included among persons who may be defrauded by the conveyance of land, for they may follow the land irrespective of all changes in title, honest or dishonest: Zuver v. Clark, 104 Pa. 227 ; Henderson v. Henderson, 133 Pa. 412 ; Byrod's App., 31 Pa. 241 ; Fisher's App., 33 Pa. 294 ; Hoffman's App., 44 Pa. 95 ; Dungan's App., 88 Pa. 416 ; Haak's App., 100 Pa. 59 ; Long v. McConnell, 158 Pa. 578.

As against everybody except persons intended to be defrauded, the deed of William Fidler and wife to Michael Lucas, of August 10, 1877, vested a good title in him for the land in controversy, subject to undisputed existing prior liens. William Fidler's title became as absolutely vested in Michael Lucas by virtue of his deed as if the deed had been executed and delivered in the best of faith for a valuable and sufficient consideration paid, and if void as to Eva A. Smink or other creditor intended to be defrauded yet the title was changed and a sheriff's sale upon the judgment of Mrs. Smink, obtained afterwards against William Fidler, would be subject to liens which existed at and before the date of the delivery of the deed to Lucas.

.   ˙ *W. H. M. Oram*, with him *G. B. Reimensnyder*, for appellees.
—So far as U. F. John was concerned, if ˙he advised the sale
from Fidler to Lucas, and the jury found that he did, the con-
veyance to Lucas was not fraudulent as to him, because he was
a party to it.   It was simply void.   There can be no fraud be-
tween parties to a fraudulent transaction, and the subsequent
sale under the Smink judgment discharged the lien of John's
judgment, consequently the subsequent sale to him by the sher-
iff by proceedings under his judgment was void, and passed no
title to him for the property in controversy; he can reap no
advantage from his fraud, and if in the absence of the fraudu-
lent conveyance the sale of the Smink judgment would have
discharged his liens, which it surely would have done, the sale
brought about by his act cannot prevent his judgment from
being affected and discharged by the sale, because if it did he
would be benefited by his own covinous act: French v. Mehan,
56 Pa. 286; Blystone v. Blystone, 51 Pa. 376; Evans v. Maury,
112 Pa. 312; Gill v. Henry, 95 Pa. 388; Murphy v. Hubert,
16 Pa. 50; McKennan v. Pry, 6 Watts, 137; Gilbert v. Hoff-
man, 2 Watts, 66; Beegle v. Wentz, 55 Pa. 369; Smull v.
Jones, 1 W. & S. 128; Faust v. Haas, 73 Pa. 295; Hoffman
v. Strohecker, 7 Watts, 86; Pendleton v. Richey, 32 Pa. 58;
Sager v. Mead, 164 Pa. 125.

Where the debtor is not the originator of the fraud, but is
enticed into the transaction, either through weakness of mind,
or the advice of his attorney, or creditor, to whom the transfer
is made, equity will grant relief, not on account of any right in
the debtor, but for the purpose of preventing any perpetration
of a greater fraud by the grantee: Bump on˙ Fraudulent Con-
veyances, 447; Prewett v. Coopwood,˙ 30 Miss. 369; Freelove
v. Cole, 41 Barb. 318; Beale v. Hall, 22 Geo. 431; Smith v.
Elliott, 1 Pat. & H. Va. 307; Ford v. Harrington, 16 N. Y.
285; Austin v. Winston, 1 H. & M. (Va.) 33; Stewart v. Igle-
hart, 7 G. & J. (Md.) 132; Dearman v. Dearman, 4 Ala. 521;
Brady v. Ellison, 2 Hay (N. C.), 348; Smith v. Bowen, 2 Hay
(N. C.), 296; Baker v. Gilman, 52 Barb. 26; Wolf v. Kohr,
133 Pa. 13; Kintzel v. Kintzel, 133 Pa. 71; Hager v. Weiss, 5
Montg. 121.

Fraud must always be proved, but great latitude is allowed
in the admission of evidence which may throw light on the

alleged fraud: Heath v. Slocum, 115 Pa. 549; Cover v. Mana-·
way, 115 Pa. 338; Lowe v. Dalrymple, 117 Pa. 564; Yerkes
v. Wilson, 81* Pa. 9; Com. v. Leed, 11 Phila. 296; Lauth v.
Walker, 1 Penny. 165; Brinks v. Heise, 84 Pa. 246; Gill v.
Henry, 95 Pa. 388; Becker v. Hammes, 2 Kulp, 404; Evans v.
Maury, 112 Pa. 312; Reed's App., 122 Pa. 578; Hood v. Fah-·
nesstock, 8 Watts, 489; Foulk v. M'Farlane, 1 W. & S. 297.

. OPINION BY MR. JUSTICE GREEN, October 5, 1896:

This is certainly a remarkable case. A man held a judgment
for valuable consideration against another who held title to
certain real estate. The plaintiff in the judgment, being a law-
yer and conferring with the defendant and his wife about a suit
pending against the defendant, advised, so say the plaintiffs in
the present suit, his clients to sell the real estate to a friend, in
order to cheat the creditor who had sued the client, and was
about to obtain an award of arbitrators against him. The ad-
vice was followed, it is said, the land was conveyed to the friend
without a penny of consideration, and, as a matter of course, the
deed was void for fraud against the creditor. Subsequently,
after the creditor had proceeded to judgment and execution,
and bought in the title notwithstanding the fraudulent convey-
ance, he conveyed the title to a trustee for the wife of the de-
fendant in the judgment and the trustee conveyed it to the wife,
and now, it is claimed that the owner of the original judgment,
which was confessed to secure a real and honest debt, has lost
his lien and cannot enforce his judgment, why? Because, it is
said, he advised the original fraudulent conveyance. Suppose
he did, how did he lose his lien? What is the connection be-
tween the premise and the conclusion of this astounding prop-
osition? Of course there is none. If the owner of the honest
judgment had a valid lien, which is not and cannot be disputed,
by what conceivable process of reasoning did he lose it. If he·
had it before he advised the fraudulent conveyance how did he·
lose it because of that advice? If it was a good judgment be-
fore the advice was given, because it was given for a valuable
consideration, it was a good judgment thereafter because it was
still a judgment which was given for a valuable consideration.
Therefore it was still a good judgment. The fact of good con-
sideration was precisely the same after as before the advice was

given.  As a matter of course there is no answer to this.  A queer contrivance of reasoning is set up by which to avoid the judgment.  It would not be entitled to consideration if it had not misled the learned court below and thereby got into the jury box.  The framework of the structure was this : If when the defendant, John, advised the plaintiff, Fidler, to make a voluntary conveyance to Lucas before Mrs. Smink obtained her award of arbitrators against him, in order to cheat Smink by taking away from her the means of obtaining satisfaction for her anticipated award, he, John, had an intent to get the land of Fidler for less than its value, this was a frandulent intent on the part of John, and he could get no title to Fidler's land, even although he bought it at a public sheriff's sale, held by virtue of an execution upon a perfectly valid judgment.

It seems incredible that any court could have been induced to lend its sanction to such a proposition, but it is so, and this case was submitted to the jury upon the question of fact whether John had such an intent when he gave the advice to the Fidlers to cheat their creditor Smink by conveying his land to Lucas without consideration.  It is difficult to deal with patience with such a proposition.  Besides the utter want of any logical connection between the premise and conclusion of the proposition, there are inherent and radical defects in it which exterminate it the moment they are exposed.  In the first place there is not even a shred of testimony anywhere in the cause that the defendant John ever had or conceived such an intent.  The whole thing is a sheer fabrication, a mere figment of the imagination.  Of course there is no direct proof of such a purpose.  Not a witness testified to a declaration or a fact which indicates in the least degree the presence of such an intent.  An attempt is made to impute such an intent by an assertion that John schemed to get the land for himself at less than its value by not entering satisfaction of certain judgments which had been paid but not satisfied of record, thereby allowing the record to show a larger amount of judgments than was really due.  The argument totally ignores the consideration that it was Fidler's business when he paid a judgment to see that it was satisfied, and if such judgments were permitted to remain open it was his neglect of his own duty in that regard.  If the record was thus made to show a large amount of liens which were not owing, it was

the work of the defendant himself, for which he was personally responsible. But the circumstance was not of the slightest consequence in any event, because any sheriff's sale under John's judgment would divest the lien of all judgments whether they were many or few, large or small. Hence the fact that the record was in that condition when John's execution was issued could not help John to get the property under its value, because the only means by which he could get it at all was a public sale by the sheriff, open to all bidders alike, with no responsibility for the application of the proceeds. Such a condition of the record, therefore, would not afford an iota of proof of an intent of John to get, by this means, the land of Fidler for less than its value. But there is an additional reason why no such inference could be permitted from such a fact. Every judgment creditor has a perfectly lawful right to enforce payment of his judgment by execution process, and to get the property of his debtor for just as small a price as he can, if the sheriff's sale thereof is public and fair, and there is not a particle of proof, or even of complaint, to the contrary, as to the sale in this case. Hence the smallness of the price realized by the sale does not afford the least pretense of a wrongful intent on the part of the purchaser at such a sale. But there are still other reasons more fatal even than these to the very singular and far fetched theory of the plaintiffs. The voluntary deed from the Fidlers to Lucas on its face divested the title of Fidler and gave it to Lucas.

Now it is not only proved and admitted by the plaintiffs, but they assert and argue now in their paper-book that it was a fraudulent deed because it was made with intent thereby to defraud Smink. This is an allegation of their own fraud, in the creation of title in Lucas, yet they now set up title in this action under this very fraudulent deed because they claim title by the subsequent deed which Lucas made to Mrs. Fidler. As a matter of course they cannot do this, and especially they cannot do it against one who was a bona fide judgment creditor of theirs by a judgment which was not divested by the sale under the Smink judgment, and who acquired his title by a sheriff's sale under this unimpeached and unimpeachable judgment. All the authorities hold that judgment creditors prior to a fraudulent sale by the debtor are not affected by a fraudulent deed made after their judgments are entered, because the fraudulent

grantee takes title subject to their judgments.    Thus in Byrod's Appeal, 31 Pa. 241, we held that where the owner of land charged with liens makes a conveyance which is fraudulent as against creditors, a sheriff's sale under a judgment subsequently obtained against the grantor passes only the title of the fraudulent grantee and the prior liens are not affected.    A conveyance intended to defraud creditors is not void, but only voidable by the creditors whom it intended to defraud, and this does not include prior lien creditors.    Such a conveyance changes the title; and after acquired judgments against the grantor are not liens against the same title as the prior ones.    Such prior liens are not, therefore, affected by a sale under subsequent judgments.    Said LOWRIE, J. delivering the opinion, " As against prior liens the title is good, but charged with the liens.    As against subsequent judgments against the grantor it is absolutely good, if it is not fraudulent as to them.    A sale on the prior liens would pass the grantee's title, honest or not, for it takes the title against which the lien was created, and not the changed or vitiated one.    A sale on subsequent judgments passes only the right to contest the grantee's title for fraud; it passes the quantity of interest that was fraudulently conveyed and subject to the same liens.    In other words it passes the title of the fraudulent grantee, because it is fraudulent, leaving in full force the prior liens against the grantee's title, which cannot be presumed to have been intended to be defrauded. . . . Its purpose and effect is to take away the title of the fraudulent grantee : whereas the purpose and effect of a sale on a prior lien is to take the title of both grantor and grantee."

This doctrine has been many times since reaffirmed and applied, and it is not at all disputed.    Applying it to the entirely undisputed facts of the present case the following results are immediately apparent.    The deed of William Fidler and wife to Michael Lucas dated August 10, 1877, was, and is admitted to have been, a fraud upon Eva A. Smink who was about to, and four days afterward, did, obtain an award of arbitrators against William Fidler who was the owner of the title.    That award was a lien against the title of the grantee Lucas.    When Mrs. Smink issued execution and sold the title it was not the title of William Fidler but of the fraudulent grantee, Michael Lucas, that was sold.    The prior lien creditors, among whom

was the defendant, John, had no claim upon the proceeds of the sale because they had no lien against Lucas ; but only against Fidler, and their liens were entirely unaffected by the sale. They could still follow the land in whose ever hands it came. John's lien therefore still remained. Neither the fraudulent deed to Lucas, nor the sheriff's sale to Smink, had any effect whatever upon it. Whether the deed to Lucas was honest or fraudulent, it did not, and could not, have any effect upon John's judgment. Now when Mrs. Smink conveyed to Lucas she could only convey what she had, to wit, the fraudulent title of Lucas, because that was the only title she had. But that title was of no avail against John who was not affected by the Smink judgment or the sheriff's sale under it. As Smink could not set up her title against John, so neither could Lucas as her grantee. Where then is there any title in either Fidler or his wife to set up against John. They had parted with their own title when they sold to Lucas, because that sale was perfectly good as to them. But the title which Lucas had under that deed was fraudulent as to Smink, and therefore she could have sustained it as against Lucas but not as against John, or any other judgment creditor prior to the fraudulent deed. Of what avail then is any claim of title founded upon the deed from Smink? None whatever. Having no title she can recover nothing in this action. Even if it were legally true, as it certainly is not, that advice given by John to Fidler to make the fraudulent deed would avoid John's judgment, how will that help the case? If he had no judgment the sale under it was void and passed no title to anybody, but that circumstance gives no title to the present plaintiffs or either of them.

In Zuver v. Clark, 104 Pa. 227, we said, " None but a person intended by the parties to the conveyance to be hindered, delayed or defrauded, or holding under such person, for instance a purchaser at judicial sale in the collection of a debt due such person, can avoid the conveyance; for only as against such person or persons is the deed void under the statute of fraudulent conveyances." Other cases holding the same doctrine are Fisher's Appeal, 33 Pa. 294; Hoffman's Appeal, 44 Pa. 95; Dungan's Appeal, 88 Pa. 416; Haak's Appeal, 100 Pa. 59, and Long v. McConnell, 158 Pa. 578.

But it is useless to waste time in discussing this branch of the case. The fundamental proposition of the plaintiffs is that John was guilty of fraud upon Mrs. Fidler by advising her husband to make a voluntary deed to Lucas in order to defraud Smink, and thereby lost his judgment and its lien against William Fidler. This proposition is without reason, or common sense, or any authority whatever to support it, and it cannot for a moment receive our sanction. It was William Fidler, not his wife, who held the title against which several creditors including John held judgments. How could there be a fraud against her which could divest his judgment against her husband because of such advice? Her lien was not affected because it was prior to the deed and she could enforce it just as well after as before the deed. But even if she had been a part owner of the title the case would have been no better. A man cannot lose his honest judgment against his debtor because he advises his debtor to cheat another creditor. If the debtor accepts the advice and attempts to cheat his creditor, he becomes a party to the fraud and cannot set up that fraud even against the man who advised it so as to take away from him a perfectly valid judgment. Some merit is claimed for Mrs. Fidler because it is said she knew nothing about the fraud. It is a matter of no consequence one way or the other, but her own testimony is an answer to the claim. She testified that she was present when the deed was acknowledged and said that she got nothing from Lucas for the deed nor did her husband so far as she saw. Lucas was her brother-in-law and he testified that he did not pay a cent to her or her husband.

It is not by any means the least consideration in the case that this claim of advice to commit a fraud on the part of John was set up and sustained only on the unsupported and uncorroborated testimony of William Fidler, who, by his confession, was the perpetrator of the fraud which was afterwards actually committed. Mr. John had nothing to do with the preparation or execution of the deed, according to the testimony of Fidler himself. It was Fidler and Lucas who went to 'Squire Hoke and got him to draw the deed. Fidler and his wife went to 'Squire Huntzinger to acknowledge it. None of them says that John had anything to do with it. But Mr. John being examined as a witness utterly and most positively denies the whole story.

He says he never gave such advice and knew nothing about the transaction.  He says also he never knew there was such a man as Lucas in existence until the sale of the property under the Smink judgment which occurred in the following year.  So that the effect of the claim of the plaintiffs in this action, if it is successful, would be, that the defendant would be deprived of his perfectly honest judgment, and also of his title by sheriff's deed, by the mere unsupported testimony of an interested witness resting in parol only, when that testimony is denied absolutely and emphatically by the other party.  Would a chancellor decree a fraud and a conveyance to be made by the defendant to the plaintiffs, or either of them, upon such testimony as this?  Most certainly not, and for that reason also no verdict having such effect should be permitted to stand.  We are of opinion that the first and fifth points of the defendant, requesting a binding instruction to find for the defendant, should have been affirmed and the case withdrawn from the jury.  The assignments of error are all sustained.

Judgment reversed.