## Commonwealth Trust Co. v. Lykens Lodge No. 1176, L. O. O. M.

J. Dress Pannell, for petitioner.
Scott S. Leiby and Snyder, Miller, Hull and Hull, contra.

HARGEST, P. J., December 6, 1933.—This case comes before us upon a petition to set aside a sheriff's sale of real estate, to which an answer has been filed and testimony taken. It appears that the plaintiff held a mortgage of $50,000 upon the property of the Loyal Order of Moose in the Borough of Lykens, which was guaranteed by a number of persons, among whom are the petitioners, Louis

Wentzler and George W. Eby. Execution was issued upon this mortgage and the property was offered at sheriff's sale on January 5, 1933. At the sale, Scott S. Leiby, attorney for the plaintiff, bid $1,935.28 and thereupon Leon Lebo, the Dictator of the Lodge of the Loyal Order of Moose of Lykens, raised the bid to $5,000, whereupon these persons then alternately bid until the sheriff declared there was a bid of $40,000 and knocked the property down to Leon Lebo. Lebo then insisted that he had not bid $40,000 but that his last bid was $39,000. Leiby insisted that his last bid was $38,000. The property was thereupon again offered for sale and the bidding proceeded until it reached approximately $15,000, whereupon Mr. Leiby demanded that the sheriff should require Lebo to pay the cash or deposit a certified check for the amount of his bid before accepting any more bids from him. The sheriff made such demand, and Lebo was not able to comply with it. The property was again offered for sale, and Mr. Leiby bid the sum of $1,935.28, which had been the initial bid each time it had been offered, and, there being no further bid, it was struck down to him. Subsequently, this petition was presented and testimony taken. It appears that Clymer Missimer, the special representative of the Supreme Lodge of the Order of Moose, was present with Leon Lebo, and that Lebo had made some arrangement with Missimer with reference to the purchase of the property. But they had neither sufficient cash nor a certified check to comply with the sheriff's request.

Under the circumstances, we think the sheriff did the proper thing in offering the property for sale after the dispute arose concerning the last bid made upon the first offering. Whether this sale should be set aside calls for the exercise of judicial discretion: Snyder v. Snyder, 244 Pa. 331; Chase v. Fisher, 239 Pa. 545. Mere inadequacy of price is not sufficient ground for setting aside a sale, in the absence of irregularity or fraud: Fidler et ux., to use, v. John, 178 Pa. 112. The situation, however, in the present case is unusual. We must assume that the property was worth, approximately at least, what the execution creditor was willing to pay for it, and the attorney for the execution creditor concedes that he bid $38,000. If the property was worth that amount and we should now permit it to be sold for $1,935.28, the guarantors of the $50,000 mortgage would be damaged to the extent of approximately $36,000. This would be a serious and inequitable result, arising because of the confusion in bidding, and perhaps because the sheriff made the unusual demand of requiring either the cash or a certified check from one of the bidders, without any previous notice that such requirement would be made.

It follows that it is only fair and equitable to set the sale aside.

There is also the question as to the amount of bond to be required. In ordinary cases, where a sale is set aside at the request of an unsuccessful bidder, a bond for the amount which the party is willing to bid on a resale is often required: Haspel, Receiver, v. Lyons, 41 Pa. Superior Ct. 285; Snyder v. Snyder, 244 Pa. 331. In this case, however, the guarantors are vitally interested and two of them are petitioners. The only amount necessary to be covered by a new bid is the amount at which the property was knocked down, namely, $1,935.28. To require these petitioners, who are guarantors, to give a bond for any further amount, would be simply making them give a bond to protect themselves because, to the extent to which a new bid exceeds $1,935.28, it goes to the relief of the guarantors. We think, under the circumstances, that a bond in the sum of $2,500 would be sufficient to protect the execution creditor against any loss by reason of a sale on this execution.

Now, December 6, 1933, the sale by the sheriff of the property of the Loyal Order of Moose of Lykens, Pa., to Commonwealth Trust Company, on January 5, 1933, is hereby set aside, upon the petitioners, or either of them, giving

bond in the sum of $2,500, conditioned to indemnify the plaintiff against any loss which it may incur in the event that the property brings less at a resale than the amount for which the property was sold to the plaintiff at said sale. In the event that said bond is given, the sheriff is hereby directed again to offer the property at public sale on said fi. fa.

From Homer L. Kreider, Harrisburg, Pa.