MAX G. ECKERT v. LORENZ WENDEL ET AL.

No. 5482. Decided June 24, 1931.
(40 S. W., 2d Series, 796.)

*Cunningham & Moursund,* for appellant.

The testimony of Lorenz Wendel and his son Henry M. Wendel shows that the conveyance of the 762 acres on May 13, 1921, was a voluntary one, and as the debt on which plaintiff's judgment is based such conveyance was void as to such creditor under article 3997, Revised Statutes of 1925, unless it appears that Lorenz Wendel at the time of making such deed was possessed of property subject to execution sufficient to pay his existing debts.

The burden of proof therefore rested on defendants of showing (a) what amount of debts Lorenz Wendel had at the time, and (b) that the reasonable value of his non-exempt property was sufficient to pay all of such debts, without considering the property so conveyed. Maddox v. Summerlin, 92 Texas, 483; Stevener v. Milano, 256 S. W., 639.

In view of the fact that appellees ask for a peremptory instruction claiming therein that plaintiff's cause of action was barred by the four years statute of limitation, we will briefly discuss such question. In this connection the plaintiff not only asks to have the deeds described in his petition declared fraudulent and null and void as to him, but in addition has pleaded a lien upon and against the property, secured by the filing of an abstract of judgment, all in accordance with the statutes of this state. He seeks to foreclose such lien and procure an order of sale of the property in this suit, thereby directly undertaking to subject the property to the payment of his debt instead of merely seeking to set aside the instruments with the view of thereafter taking steps for the purpose of sub-

jecting the property to his debt. This being the nature of the suit, the case is remarkably similar to that of Bank v. Douglas, 7 S. W. (2d) 148. The court held that there was no distinction of principle between the nature of such suit and the suit in the Rutherford Carr case, 99 Texas, 101, 87 S. W., 815. These decisions appear to be in accord with the rule adopted in many states. See Corpus Juris, vol. 27, p. 763, sec. 654 and note 72. We cite in this connection the case of Reynolds v. Lansford, 16 Texas, 287; Martell v. Somers, 26 Texas, 551; Sterns v. Marx, 23 Tex, Civ. App., 439, 56 S. W., 93. It seems clear under the Texas cases hereinbefore referred to that the plaintiff's cause of action was not barred under any four years statute regardless of any issue as to whether or not he showed sufficient facts to excuse his failure to bring his suit at an earlier date for the purpose of subjecting the property to the payment of his debt. It appears from his pleadings and evidence that he had no knowledge or notice of the fact that Lorenz Wendel had rendered himself unable to pay his debts until after he had obtained a judgment and had issued an execution. It seems clear under the authorities that the mere recording of a deed would not be sufficient to give notice of any fraudulent intent.

*H. H. Sagebiel,* for appellees.

The evidence clearly shows not only that Lorenz Wendel owned property, subject to execution in the state of Texas, largely in excess of all debts he owed at the time of the execution of his deed to Henry M. Wendel for the 762 acres of land, but further clearly showing that plaintiff's cause of action was barred by the four years statute of limitations, the court properly overruled plaintiff's motion for an instructed verdict in his favor. Where there is competent evidence to support the verdict of the jury, the appellate court has no right to disturb the same, but is bound by the finding of the jury.

The material inquiry in this class of cases is whether or not the grantor, Lorenz Wendel, was solvent or insolvent at the time of the conveyance of the 762 acres of land to his grantee, Henry M. Wendel. No question is raised as to the conveyance of 157 acres by Lorenz Wendel to Henry M. Wendel, in August, 1924. That feature of the case was abandoned before the court prepared his charge to the jury.

In these remarks we shall first direct our attention to the authorities cited by appellant. On pages 22 and 23 of his brief he says "the case is remarkably similar to that of Bank v. Douglas, 7 S. W. (2d) 148. However, that similarity is not so obvious. On the contrary the Douglas case is wholly dissimilar. As we understand it, it is a proceeding especially permitted under article 3314, which expressly declares that * * * "Whenever a person dies intestate *all* of his estate shall vest immediately in his heirs at law, but with the exceptions aforesaid shall still be liable and subject in their hands to the payment of the debts of the intestate, etc." In

the present case, however, we are not dealing at all with the property of an intestate. In the Douglas case the court says: "Clearly appellant's suit is not one to set aside the fraudulent deeds." There can be no contention that this is not a suit to set aside the deed. Appellant in his prayer asks "that * * * said conveyances * * * be adjudged fraudulent and void, as against plaintiff, that the same be set aside and held for naught," etc., so that the land may be subjected to the further remedies prayed for, but which are dependent on the setting aside of the conveyances.

At the very beginning of the statement of his case in his brief, filed in this honorable court, the appellant says: "This is a suit by Max G. Eckert against Lorenz Wendel and H. M. Wendel * * * seeking to set aside two certain conveyances," etc.

The court simply holds, in the Douglas case, that neither the three years on the five years statutes of limitations apply in that class of cases.

Appellant seems to rely much on the case of Rutherford v. Carr, 99 Texas, 101, 87 S. W., 815. However, that case was one in trespass to try title and there the statutes of limitation, prescribed for cases in which the recovery of land is sought, were applied. Appellant certainly will not contend that this is such a case. In the Rutherford-Carr case it is declared that the application of the statute depends upon the character of the action. That being an action to recover real estate, it was held that the four years statute did not apply, because such action was excepted by express terms.

The court further says: "There is much conflict among the authorities as to the time when the statute of limitations will begin to run against a suit to set aside a fraudulent deed, *but we found no case in which the period of time that would bar an action to set aside a deed would defeat a suit for the recovery of land.*" In all cases where the suit was to recover land, the statutes applicable to such actions have been applied.

MR. JUSTICE GREENWOOD delivered the opinion of the court.

Plaintiff in Error Max G. Eckert, being the owner of a duly abstracted judgment against Lorenz Wendel and another, brought this suit against Lorenz Wendel and Henry M. Wendel to cancel a deed to land in Gillespie county from Lorenz Wendel to Henry M. Wendel, such deed executed after the indebtedness of Lorenz Wendel to plaintiff in error was created, upon the ground that the deed was without consideration and was given in pursuance of a conspiracy to hinder, delay and defraud the creditors of Lorenz Wendel. Plaintiff in error also sued to establish his judgment lien against said land for its foreclosure against both Lorenz Wendel and Henry M. Wendel.

Defendants in error except to plaintiff in error's petition "in so far as it seeks to set aside the deed dated May 13, 1921, conveying 762 acres of land for the reason that it appears from the face of said petition that

plaintiff's cause of action, if any he has, accrued more than four years as to said deed before the filing of his original petition in this cause, and is barred by the four years statute of limitations."

The district court overruled the special exception invoking the four years statute of limitations, but the jury having found that Lorenz Wendel was possessed of property at the date of his deed to Harry M. Wendel which was subject to execution and sufficient to pay his debts, the district court entered judgment for defendants in error.

The Court of Civil Appeals finding that the evidence was conclusive that the conveyance to Henry M. Wendel was voluntary and fraudulent and that Lorenz Wendel was at the date of the conveyance wholly insolvent, nevertheless affirmed the judgment of the trial court. The opinion of the Court of Civil Appeals discloses the basis for the court's action in its concluding sentences, reading:

"Appellant was defrauded by means of the conveyance from Lorenz Wendel to Henry M. Wendel of the 762 acres of land, by deed dated May 13, 1921, filed for record June 18, 1921, to set aside which he instituted this suit on January 30, 1928, over 6½ years later. We must hold that his equitable action was barred by the statute of limitation of four years. McCampbell v. Durst, 15 Tex. Civ. App., 522, 40 S. W., 315; Vodrie v. Tynan (Tex. Civ. App.), 57 S. W., 680; Central Nat. Bank v. Barclay (Tex. Civ. App.), 254 S. W., 140.

"While appellant has established his case upon every point but one, he failed to file his suit in time, and it is therefore barred by the four years statute of limitation (Rev. St., 1925, art. 5529) from the date of his judgment, which statute applies to equitable titles." 15 S. W. (2d) 1064-1067.

The single question presented for our decision is whether the action of plaintiff in error was barred by the four years statute of limitations.

The law is settled in Texas that a creditor, though he have no specific lien, may maintain an action in equity to vacate a fraudulent conveyance of his debtor's land. Until the creditor, in some manner—such as by levy of attachment or execution or by record of an abstract of judgment—acquired a lien, or until he acquires title by sale under execution, his only remedy, as against the grantee in a conveyance of real estate in fraud of his rights, is an action for a decree annulling the conveyance as an obstruction to the collection of his debt. Such an action is not one for the recovery of land, nor is it one to enforce a lien on land, but it is simply an action to cancel a conveyance of land because of fraud, and no other period of limitation being prescribed for such an action it comes within the four years statute. Arbuckle Bros. Coffee Co. v. Werner & Cohen, 77 Texas, 44 to 46, 13 S. W., 963; Cassaday v. Anderson, 53 Texas, 535 to 539; Anderson v. Cassaday, 36 Texas, 652.

The creditor's cause of action to annul a fraudulent conveyance

accrues when the creditor acquires knowledge of the fraud or would have acquired such knowledge in the exercise of ordinary care. Registration of the fraudulent conveyance at a certain date is merely one circumstance bearing on the creditor's actual or presumed knowledge. Bump on Fraudulent Conveyances (4th Ed.), sec. 574, p. 559; Smith v. Talbot, 18 Texas, 783; Hudson v. Wheeler, 34 Texas,, 367; Kuhlman v. Baker, 50 Texas, 636; Vodrie v. Tynan (Texas Civ. App.), 57 S. W., 681; Ryman v. Petruka (Texas Civ. App.), 166 S. W., 711, 712.

In the instant case, plaintiff in error having obtained a judgment lien on the lands of his debtor, Lorenz Wendel, sued to establish that lien and to foreclose it, against both Lorenz Wendel and Henry M. Wendel, the latter alleged to have no right, title, or interest in the lands, save as grantee in a conveyance, executed by Lorenz Wendel to Henry M. Wendel without consideration and for the purpose of hindering, delaying, and defrauding the subsisting creditors of Lorenz Wendel, including the plaintiff in error.

A careful analysis discloses that under the decisions of the Supreme Court of this state a suit to enforce a subsisting judgment lien on land against a grantee in a conveyance void under our statutes as to the judgment creditor, is not barred until the fraudulent grantee or his assigns acquires "full title" to the land, "precluding all claims," under some statute of limitations which would bar an action for the recovery of real estate.

In Rutherford v. Carr, 99 Texas, 105, 87 S. W., 815-816, the court approved an earlier decision saying:

"In Belt v. Raguet, 27 Texas, 481, the issue was the right of the creditor to sell property fraudulently conveyed, and the claimant of the property pleaded limitation against the right to have the property sold. In answer to the plea the Supreme Court of this state said: 'A fraudulent conveyance is declared void by the statute, as to the creditors of the fraudulent grantor. As a necessary consequence, no length of possession by the debtor has any effect upon the rights of the creditor, so long as his debt remains unsatisfied and his remedy for its collection is not lost by his laches; and as the fraudulent vendee gets no title against the creditor by the conveyance, he can only bar his recovery by such adverse possession as will give him title.' This language distinctly holds that the limitation applicable to that case was that which is invoked by adverse possession."

The opinion in Rutherford v. Carr, supra, plainly construes the Texas statutes as preventing the passage of title out of the debtor, as against the protected creditor, by a conveyance denounced as fraudulent as to such creditor, and as entitling the creditor in any proper action between himself, his debtor, and those claiming under the fraudulent conveyance to establish its true character. The court thus gives effect to the Legislature's denunciation of the fraudulent or voluntary conveyance as *void as*

to creditors within the protection of the statutes. It was therefore decided in Rutherford v. Carr that without first maintaining an equitable action to cancel a fraudulent conveyance and subsequent to the time when such an action would be barred under the four years statute, the creditor could sell the property conveyed, under execution, and acquire such title as would enable him to successfully maintain an action of trespass to try title against those claiming under the fraudulent conveyance, until the action of trespass to try title was barred by adverse possession under the three, five, or ten years statutes. (Revised Stat., 1925, arts. 5507, 5509, 5510). In speaking of the judgment of the district court, which upheld the title of the grantee in the fraudulent conveyance, the opinion in Rutherford v. Carr, at page 107, of 99 Texas, 87 S. W., 815, 817, concludes: "A fair analysis of this judgment may be thus stated: The plaintiffs (the purchasers at execution sale) have the legal title to the land, but the defendant, who cannot sustain limitation against the right to recover, thwarted an attack upon his void deed by pleading limitation that would be a bar to a suit which plaintiffs did not institute. The judgment cannot be sustained."

In a prior part of the opinion, the reason for the decision was given in a quotation from the Supreme Court of South Carolina in Amaker v. New, 33 S. C., 36, 11 S. E., 386, 387, 8 L. R. A., 689, as follows: "I can very well understand how the law, from consideration of public policy, may forbid one from invoking its aid by bringing an action to set aside a deed for fraud after the time limited for the purpose, but I am unable to understand upon what principle, either of law, equity or good morals, one who has made out a prima facie case for the relief he demands can be forbidden from showing that the defense set upon against his claim is founded in fraud, simply because such fraud had been committed so long ago as to bar an action brought to obtain relief from such fraud."

The precise question before us arose in South Carolina soon after Amaker v. New was decided. Treating that decision as necessarily determining that a fraudulent conveyance was a nullity as to a creditor, so that it could afford no obstacle to a mortgage creditor's foreclosure, though a suit for cancellation of the fraudulent conveyance was barred, the Supreme Court of South Carolina declared:

"But we are of opinion that the statute of limitations is not applicable to the case. This is not an 'action for relief on the ground of fraud,' but, on the contrary, it is simply an action for the foreclosure of a mortgage of real estate, and the plea of the statute does not, and cannot, have any applicability to anything but the cause of action as stated in the complaint. * * *

"The plaintiff here having established his cause of action as set forth in his complaint, by proving the execution of the note and mortgage, was entitled to judgment of foreclosure, unless the appellant succeded in estab-

lishing her title paramount to the mortgage. For this purpose she relied upon the deed in question, and, therefore, the only remaining question was whether such deed was sufficient to vest the title in her; and surely the plaintiff was at liberty to show any defect in that deed which would render it insufficient to vest such title in appellant, either by showing that it was a forgery, or that it was obtained by duress or any other fatal defect; and if so, why should not the plaintff be allowed to show that it was void for fraud, and, therefore, incapable of vesting the title in appellant, and thus insufficient to sustain the defense relied on. It must be remembered that the statute of limitations does not even purport to destroy or extinguish a cause of action, but simply to close the doors of the courts to a suitor who undertakes to bring his suit upon such cause of action after the lapse of the prescribed time. Hence it has been held in Wilson v. Kelly, 16 S. C., 216, that while a holder of a note may have lost his right of action for the breach of the contract evidenced by the note, by reason of the lapse of the prescribed time, yet if he can obtain payment in any other way than by resort to an action on such contract, he has the right to do so. So here the statute does not have the effect of converting a fraudulent deed into a valid deed, by reason of the lapse of the prescribed time, but it simply forbids the right of action for relief on the ground of fraud; and hence, if the question as to the fraudulency of the deed arises in any other way than in such an action, there is nothing in the statute which forbids its being assailed for fraud. It seems to us that the case of Amaker v. New, 33 S. C., 35, 11 S. E., 386, 8 L. R. A., 687, supra, is so entirely conclusive of this question that we need not consider it further." Jackson v. Plyler, 38 S. C., 500, 501, 17 S. E., 255, 257, 37 Am. St. Rep., 782.

In a dissenting opinion in Brasie v. Minneapolis Brewing Company, 87 Minn., 468, 92 N. W., 340-344, 67 L. R. A., 865, 94 St. Rep., 709, Chief Justice Start gave a clear statement of the grounds supporting the conclusions reached in Rutherford v. Carr, Amaker v. New, and Jackson v. Plyler, supra, when he said:

"The conclusion that the legal title passes by the execution sale necessarily follows from the rule, which is well settled in this state, and in nearly all of the states of the Union having statutes similar to our own (G. S. 1894, sec. 4222), that the title of the fraudulent grantee in such cases is, as to the creditor, a nullity, and his judgment a valid lien at law upon the land attempted to be fraudulently conveyed, which may be enforced in the same manner and with precisely the same effect as if there had been no conveyance. * * * As to the creditor, to defraud whom the conveyance is made, it is void (G. S., chap. 41, sec. 18; G. C., 1894, sec. 4222), and is of no effect whatever in the way of passing the title. The title, for the purpose of enabling creditors to enforce their debts against the real estate, still remains in the grantor, as though the

conveyance had not been made; and it is equally clear that the creditor who has proceeded to enforce his debt against the real estate, or any one claiming through such proceedings, may show the conveyance to be void, as against such proceedings, whenever any one shall claim under such conveyance, and in opposition to the creditor's proceedings, or the title derived through them."

Similar views are expressed by the Supreme Court of Missouri in Slattery v. Jones, 96 Mo., 216, 8 S. W., 555, 9 Am. St. Rep., 344, where it is said:

"The court below held that a judgment is not a lien upon property fraudulently conveyed prior to its rendition; that such a transfer is not void, but only voidable as against creditors; that the levy of an attachment created a superior lien to the supposed lien of a judgment thus rendered; and decreed the title to be in the plaintiff.

"Our statute declares that every conveyance of land made with intent to defraud creditors, etc., 'shall be from henceforth deemed and taken, as against said creditors and purchasers, * * * to be clearly and utterly void.' Rev. St., sec. 2497. Futher statutory provisions bearing on the point in hand are as follows: "Sec. 2730. Judgments and decrees rendered by any court of record shall be a lien on the real estate of the person against whom they are rendered, situate in the county in which the court is held. Sec. 2731. Such liens shall commence on the day of rendition of the judgment, and shall continue for three years.' * * *

"In his work on Executions, Mr. Freeman observes: 'Whoever goes out with an execution to seek the fruits of his judgment is too apt to find that fraud has forestalled him. It then becomes his business to pursue these fruits wherever fraud has taken them; to wrest them from the possession of his adversary, wherever they may be found; and to prepare himself to show that the refuge whence he has wrested them is the refuge of fraud. In many instances the aid of equity is invoked. But, generally, that is unnecessary; for a transfer made to hinder, delay, or defraud creditors, while, as between the parties, it conveys the title, has, as against a creditor proceeding under execution, no such effect. As against the fraudulent transference, the creditor may seize the property, whether real or personal, as that of the fraudulent vendor, and may proceed to sell it under execution. The title transferred by such sale is not a mere equity, not the right to control the legal title, and have the fraudulent transfer vacated by some appropriate proceeding; it is the legal title itself, against which the fraudulent transfer is not transfer at all.' Freem. Ex'ns., sec. 136. * * *

"An author of recognized authority says: 'If the creditors obtain judgments against the debtor after the transfer, they acquire liens upon his property, wherever the same are given by law, according to the dates of their respective judgments, in the same manner precisely as if no trans-

fer had been made; for the transfer is a nullity as against them, and the legal as well as the equitable title remains in the debtor for the purpose of satisfying debts.' Bump, Fraud. Conv. (3rd Ed.), 474. This position is abundantly sustained by the authorities."

In Thomason v. Neeley, 50 Miss., 313, a statute like that of Texas was under consideration, when the court said:

"We have held, in several cases, analogous in features to this, that as the statute condemned a fraudulent conveyance to be null and void as to the creditor, he has precisely the same extent of right against the property embraced in it as though it never had been made. In effect, the debtor owns the property with the same extent of interest as though he never had conveyed, and the creditor has a lien under his judgment, quite as controlling over the title as though the fraudulent deed had never been executed. The creditor may treat his debtor as owner of the property, and may pursue his process for satisfaction as if the title were unembarrassed by the fraudulent deed."

As stated in Smith v. Reid, 134 N. Y., 577, 31 N. E., 1082-1085, "A judgment creditor cannot be deprived of his legal right to enforce collection of his judgment against the lands of his debtor by a fraudulent conveyance thereof prior to the entry of the judgment, nor can he by such a conveyance be forced to pursue an equitable remedy for the collection of his debt, instead of a legal one."

The situation, under the averments of plaintiff in error's petition, is this: the land as to him is still the property of his debtor and hence he is entitled to have the land sold under foreclosure of his judgment lien and its proceeds applied to his debt, unless the vendee of the debtor has acquired title by three, five or ten years limitation. Henderson v. Henderson, 133 Pa., 413, 19 A., 424, 19 Am. St. Rep., 650; First National Bank of L. A. v. Maxwell, 123 Cal., 370, 371, 55 P., 980, 69 Am. St., 64; Hillyer v. Le Roy, 179 N. Y., 375, 376, 77 N. E., 237, 103 Am. St., 919.

We are unable to reconcile our decision with the action of the Supreme Court in refusing a writ of error in Gans v. Marx, 25 Texas Civ. App., 497, 61 S. W., 527, which case was cited by the Supreme Court in Home Inv. Co. v. Strange, 109 Texas, 342, 195 S. W., 852, 204 S. W., 1314, 209 S. W., 307. The opinion in Gans v. Marx is therefore expressly disapproved.

The Supreme Court, through Chief Justice Hemphill, observed in Reynolds v. Lansford, 16 Texas. 291, that both principle and high authority supported the proposition that limitations would bar the rights of a creditor when the vendee in a fraudulent conveyance held actual, exclusive and adverse possession of the property owned. The opinion of Chief Justice Gaines in Wilcox v. National Bank, 93 Texas, 332, 55 S. W., 317-320, declared that "under the rule in this State, an action to enforce

a lien upon land, there being no adverse possession, is not barred until the debt is barred. Slaughter v. Owens, 60 Texas, 668; Beck v. Tarrant, 61 Texas, 403. Adverse possession for the statutory period would probably preclude a claim for a lien. Rev. Stats., art. 3347; Towns v. Harris, 13 Texas, 507."

That adverse possession should preclude the successful assertion of a claim against land, held under the prescribed adverse possession, though the claim was in the form of a lien, necessarily resulted from the principle declared in Heirs of Burton v. Carroll, 96 Texas, 325, 72 S. W., 581-582, that the full title "to land, acquired by limitation embraced all of the title which had emanated from the state * * * as against the claim of any and all persons."

The single question determined in White v. Pingenot, 49 Texas Civ. App., 641, 90 S. W., 672, was that a deed void as to a judgment creditor for fraud supported the three and five years statutes of limitations, and that three and five years adverse possession under such deed, the other requirements of these statutes being met, could be invoked by the grantee in the fraudulent deed to defeat foreclosure of the creditor's judgment lien on the land. White v. Pingenot was in line with B. C. Evans Co. v. Guipel (Texas Civ. App.), 35 S. W., 941, which was followed in Stern v. Marx, 23 Texas Civ. App., 439, 56 S. W., 93, with writ of error denied in the latter case.

In Shaw v. Ball (Texas Com. App.), 23 S. W. (2d) 202, the Commission of Appeals in an opinion by Judge Critz sustained the decision of the Eastland Court of Civil Appeals to the effect that the judgment creditor's lien on real estate, acquired by registration of an abstract of judgment was such a claim to land as could be defeated under the three and five years statutes of limitations. Relative to the citation by the court of Eastland of White v. Pingenot, the opinion of Judge Critz says:

"The authority cited by them in support thereof is certainly in point, and, as writ of error was denied in that case, the Supreme Court must have approved the holding, as the writ could not have properly been denied in any other event." Shaw v. Ball (Texas Civ. App.), 23 S. W. (2d) 291-293; J. M. Radford Groc. Co. v. Shaw (Texas Civ. App.), 9 S. W. (2d) 419.

Discussing the case of Vodrie v. Tynan (Texas Civ. App.), 57 S. W., 680, the opinion of Mr. Justice Brown in Rutherford v. Carr, supra, said:

"In that case the property had been conveyed by a debtor so that it finally reached his wife and she had occupied and used it strictly in accordance with the statute for the number of years required to complete the bar against the lien of the creditors. It was held in that case that her possession barred the right of the creditors to subject the property to the payment of the debt. The statutes applicable to suits for real estate were applied. In the same case, plaintiff, as an alternative remedy, sought to

have the court sell the property and to pay to the vendee of the debtor the sum actually paid for it and to distribute the remainder of the proceeds of the property among the creditors, but the court declined to do so because if the property had been occupied for such length of time that the defendant acquired title thereto, the court certainly could not in any proceeding sell it for the purpose of distributing its value between the owner and any other claimant." 99 Texas, 106, 87 S. W., 815-817.

The Supreme Court reviewed the case of Pearson v. Burditt, 26 Texas, 173, 80 Am. Dec., 649, in the leading case in Texas, interpreting the three years statute, saying through Chief Justice Stayton:

"The question was sharply presented in the brief of counsel, thus: 'The deed of Burditt does not come within the statutory definition either of title or color of title. It is not 'a regular chain of transfer from and under the sovereignty of the soil.' A chain of title of which one of the links or deeds if fraudulent can not be said to be regular. The patent passed the fee to Silsbee; the deed to Burditt, being fraudulent, transferred no title. Hence the distinction between the three and five years statutes; the first requires a 'title', the second a 'deed'. Burditt's deed did not connect him with the title vested in Silsbee by the patent; a fraudulent deed conveys no title. * * * If it did not vest the title, Burditt can not be said to hold under a 'regular chain of transfer.' It does not come within the definition of 'color of title,' because the fraud in its execution 'extends to' and 'includes' the want of 'intrinsic fairness and honesty.' Hence it does not amount to a 'title' or color of title under the three years statute, but may be good as a deed under that of five years.'

"Speaking of the plea of limitation based on three years adverse possession, this court said: 'We think it is a good defense, notwithstanding the jury might have believed that the fraud in Burditt's deed was sufficiently proved. As a mere question of the validity of Burditt's title, it is true, as stated in the opinion above quoted, the plaintiff was in a situation to avoid Burditt's deed for fraud and have it set aside, being the administrator of Silsbee's estate. * * * It was in this point of view that the remark was made in the opinion quoted, that plaintiff could avoid Burditt's deed by showing it to be fraudulent. It was made with reference to the validity of Burditt's title, and not with reference to its capacity to support the defense of the statute of limitations of three years. * * * We do no decide this case upon any other principles than those which would govern us were Buditt's only a color of title instead of title.' If fraud in the execution of a muniment of right by an administrator whereby the property of an estate passes by color of title to a party to that fraud, does not fix upon the instrument by which this is accomplished a want of 'intrinsic fairness and honesty,' it can not be held that notice of superior right in another at the time color of title is acquired can do so. * * *

"The statute protects any person having three years peaceable adverse possession who can show a regular chain of transfer from or under the sovereignty of the soil conveying what the sovereign's grant purports to convey. The conveyances in the chain must be sufficient to do that, assuming that they are sufficient if they be executed by the proper persons, as conveyances of land are required to be, *and on their faces* purport to convey the land described in the original grant, and be not collateral." Grigsby v. May, 84 Texas, 255, 256, 257, 19 S. W., 343-349.

We cannot declare a deed which is void because in fraud of creditors to be insufficient to support five years limitation without violating the rule which requires that the deed must be forged or void on its face or else it will support the five years statute. Rosenborough v. Cook, 108 Texas, 366, 194 S. W., 131; Schleicher v. Gatlin, 85 Texas, 275, 20 S. W., 120. No voluntary deed is denounced by the statute as necessarily void as to prior creditors. Its validity depends on the debtor's solvency at the date of its execution. The debtor's solvency necessarily depends on facts extrinsic of the face of the deed. Likewise the intent to hinder, delay and defraud which makes a gift or conveyance void as to creditors is rarely or never declared on the face of the deed.

In Davis v. Howe (Texas Com. App.), 213 S. W., 609-611, it is said that a deed which violates the statute governing a voluntary or a fraudulent conveyance will support a title by limitation under the five years statute. After referring to the Supreme Court's reaffirmation of Belt v. Raguet, supra, and its approval of Vodrie v. Tynon (Texas Civ. App.), 57 S. W., 680, the Commission of Appeals in Davis v. Howe, stated:

"We can perceive of no good reason for differentiating the effect, under the five-year statute, of the sheriff's deed here involved and a deed by one in fraud of creditors executed in violation of the express terms of the statute, the grantee himself participating in the fraud. * * *

"The only instrument possessing the essential constituent parts of a deed, as does the deed here in question, excepted by the statute from forming the basis of title under the five-year statute, is a forged deed or a deed executed under a forged power of attorney. * * *

"Originating in fraud, the deed is without effect as a muniment of title; but, fair of face and duly recorded, it performs the office and function of a deed under the statute in like manner as though executed merely as a grantor without semblance of title. Being notified of an adverse claim, whatever its origin, there being no issue of fraud undiscovered or concealed, plaintiffs in error had five years within which to file suit for the recovery of the land, failing in which they are now without remedy." 213 S. W., 609, 611.

The judgments of the district court and of the Court of Civil Appeals are reversed and this case is remanded to the district court for another trial in accordance with this opinion.