## HOERSTER v. WILKE et al.

### No. 8904.

Court of Civil Appeals of Texas. Austin.

May 8, 1940.

Rehearings Denied June 5, 1940.

Agnes Sagebiel and Petsch & Usener, all of Fredericksburg, for appellants.

N. T. Stubbs, of Johnson City, and J. B. Wieser, of Fredericksburg, for appellees.

BAUGH, Justice.

D. J. Hoerster, as receiver for Oscar Krauskopf and William Bierschwale who formerly as partners had operated a private bank under the name of Citizens Bank, at Fredericksburg, Texas, brought this suit on August 7, 1934, against Ernst Wilke, Sr., on his promissory note for $3,000, dated January 21, 1931, payable on demand to said bank. Said Receiver also sought to set aside certain assignments and conveyances made by Wilke to members of his family, on the ground that they were without consideration, rendered Wilke insolvent, and were made to defraud his then existing and future creditors. These conveyances consisted of an assignment in June, 1928, of $16,400 in vendor's lien notes to his wife, Emma Wilke; conveyance to his daughter, Emma T. Wilke, on May 30, 1930, of a house and lot in Fredericksburg; and a conveyance on the same date to two daughters, Sophie Hohman and Hermine Land, of about 500 acres of land in Gillespie County. Ernst Wilke, Sr., in addition to general and special exceptions, and general and special denials, pleaded limitation against the debt; that it was the debt

of his son, Ernst Wilke, Jr., on which he was at most only surety; and if liable pleaded as a set-off certain notes payable to Wilke, Jr., which were turned over to the bank as collateral and which he alleged they had negligently failed to collect, but had permitted to become barred by limitation.

His wife, Emma Wilke, and the children to whom the conveyances were made, pleaded the three and four-year statutes of limitation, and by cross-action sought to have their titles to the respective properties quieted. Trial was to a jury on special issues and upon their answers thereto judgment rendered in favor of Hoerster, as Receiver, for the full amount of the debt; but cancellation of the conveyances was denied; and title to the respective properties quieted in the grantees. Both Hoerster and Wilke, Sr., have appealed.

We first consider Wilke's appeal. The note in question was executed to take up an overdraft on said bank theretofore made by the Sudden Service Garage of Fredericksburg. The bank asserted liability against Wilke, Sr., as against his sworn denial, on the grounds that at the time the overdraft was incurred Wilke, Sr., was a partner with his son in the Sudden Service Garage; or if not in fact a partner, that he was liable for the debt on the ground that he had held himself out to the bank to be such partner and had induced the bank to extend credit to that concern on such representation and belief; or that in any event he had induced the bank to extend such credit on his agreement to see that its debts were paid, or to pay them himself.

These issues were made by the pleadings and the evidence and were submitted to the jury. In response to the various issues submitted the jury found:

1. That Wilke, Sr., was, at the time the debt accrued, a member of the partnership business of Sudden Service Garage;

2. That he held himself out to the officers of the bank as such;

3. That the officers of the bank believed, at the time they extended credit to the Sudden Service Garage, that he was such partner;

4. That a reasonably prudent person would have so believed;

5. That prior to the accrual of said debt Wilke, Sr., promised the officers of the bank that he would be personally responsible for the overdrafts of the Sudden Service Garage;

6. That the bank extended credit to the garage in reliance upon such promises;

7. That Wilke, Sr., did not sign said note as surety for his son.

Wilke's first contention is that he was entitled to an instructed verdict in his favor in that having denied under oath the existence of the alleged partnership, the burden was upon the plaintiff to prove its existence; and that the evidence wholly failed to do so. This contention relating to the proof is not sustained. Such burden was upon the plaintiff to make such proof. On the issues presented the testimony was sharply conflicting. It is not controverted that in August, 1929, the Sudden Service Garage secured an automobile sales agency; that it could not pay for the cars as received; and that arrangements were made with the bank to honor overdrafts for the purchase price of cars received, with the understanding that such overdrafts would be paid off as the cars were sold; and that this type of credit was extended by the bank to the Sudden Service Garage.

As to the circumstances, conditions and representations under which credit was extended by the bank, the testimony of Wilke, Sr., and Wilke, Jr., was directly in conflict with that of the officers and employees of the bank. The jury chose to believe the latter and render their verdict accordingly. That being true their findings will not be disturbed.

It was not necessary, in order to create a partnership liability against Wilke, Sr., for plaintiff to prove an actual partnership agreement between the father and son. Such a partnership liability may rest as well upon estoppel of one or both parties to deny the existence of the partnership relation, where their conduct or representations are such as to lead to the extension of credit to the firm on a legitimate assumption of a partnership relation. In such case it is immaterial whether an actual partnership relation existed or not. Secs. 32 and 33, Tex.Jur. vol. 32, pp. 270–273.

Appellant Wilke next contends that plaintiff's pleadings asserted liability against him based only upon the existence of an actual partnership relation between him and his son; that recovery must depend upon this ground alone; and that therefore issues 5 and 6 which related to a partnership by estoppel should not have been sub-

mitted. That is, that a partnership by estoppel was not pleaded in the alternative.

This contention is not sustained. Plaintiff did allege an actual partnership between the father and son. Immediately following such allegation he further pleaded that if he be mistaken in his allegations as to the existence of an actual partnership between them; then that the son was conducting said business, and the father held himself out as a partner and led the bank to so believe, extend credit, etc., on such representations, setting out detailed facts as estopping Wilke, Sr., from denying the existence of a partnership relation. While not expressly designated as an alternative plea, such is the essential nature and result of such allegations and they must be so construed. Under such allegations plaintiff's right of recovery manifestly would not depend solely upon proof of an actual partnership relation.

Wilke, Sr., also contends that failure of the trial court to submit to the jury the issue of the offsets pleaded was error. His allegations in this regard were that Ernst Wilke, Jr., had transferred to said bank secured notes payable to him aggregating in amount approximately $1,800 to be applied on the debt of the Sudden Service Garage to the bank; that the sums collected thereon by the bank had not been credited on said debt; and that the bank and the Receiver had negligently permitted some of these notes to become barred by limitation. Manifestly, this was an independent ground of defense, pro tanto, to the note sued upon. It was not submitted to the jury, nor did Wilke request that it be submitted. Consequently, it is deemed to have been waived. See 41 Tex. Jur. § 256, p. 1070, and numerous cases cited in support of the text.

Nor is there any conflict in the findings of the jury that an actual partnership existed between Wilke, Sr., and Wilke, Jr.; that Wilke, Sr., held himself out as a partner and so procured credit; and further that he agreed, in order to obtain credit for the Sudden Service Garage, to personally be liable for its debts. These were alternative grounds upon which his liability was predicated. And the finding, where supported by competent evidence, either of actual partnership, or partnership by estoppel, would merely render immaterial the finding of an agreement to be personally liable.

We now consider the appeal of Hoerster. The first contention made is that the trial court erred in refusing to submit to the jury the requested issues as to whether the assignment of the vendor's lien notes to Mrs. Wilke, and the deeds to his children, were made with the understanding between them that these properties were to still remain the properties of Wilke, Sr. The bona fides of the conveyances, or whether they constituted merely simulated transactions with no intention to pass title to the grantees; was raised by the pleadings. As stated by Judge Gaines in Steffian v. Bank, 69 Tex. 513, 518, 6 S.W. 823, 824, and quoted in Cox v. Payne, 107 Tex. 115, 118, 174 S.W. 817, 818, "The instrument must not only be placed within control of the grantee, but this must be done by the grantor with the intention that it shall become operative as a conveyance." See also 14 Tex.Jur., § 59, p. 821. If, therefore, Wilke did not intend that this assignment to his wife and the conveyances to his daughters operate to transfer title to them none would pass, and such purported conveyances would afford no basis for even color of title under Arts. 5507 and 5508, R.C.S. 1925.

The evidence was clearly sufficient to raise the issues requested to be submitted. On this question we need look only to the evidence which would support an affirmative answer to the issues requested, and disregard that to the contrary. So considered there was evidence to the following effect: That in 1928 Wilke, Sr., was being sued in San Antonio and was fearful that his property would be taken away from him, and made the assignment of the vendor's lien notes to his wife for that reason; that he never delivered possession of said notes to his wife but kept them in his possession, claimed to own them and as late as 1933 offered to hypothecate them to the bank as collateral security. That Emma T. Wilke was only 15 years of age when he conveyed her the property in Fredericksburg; that thereafter he continued his control and management thereof, as well as of the ranch property deeded to the other two daughters, renting or leasing same and collecting the rents therefrom, and rendering all of said properties for taxes in his own name continuously up until after the instant suit was filed. All this was done with the full knowledge and consent of the children. While they

956

testified that their father paid to them the rents collected by him, none of them could remember how such payments were made, when, where, nor in what sums. Such evidence was, in our opinion, clearly sufficient to raise a jury issue as to whether Wilke, Sr., ever intended by such conveyances to vest title to said properties in the grantees; and to require the submission of the requested issues.

 The next question presented relates to limitation. The suit of Hoerster, Receiver, to set aside the assignment in 1928, of the vendor's lien notes, and the deeds of May, 1930, was grounded upon fraud. It was not a suit for the land, but a personal action, to which the four-year statute of limitations applies, and which began to run from the date the fraud was committed, or if not disclosed by the transactions themselves, from the date the fraud should have been discovered by the exercise of reasonable diligence. Eckert v. Wendel, 120 Tex. 618, 40 S.W.2d 796, 76 A.L.R. 855; 20 Tex.Jur., §§ 132-134, pps. 485–487. Nor is the recording of the fraudulent conveyance presumptive notice to the creditor of the fraud. It is but a circumstance, and not notice to the creditor that the recitals of consideration paid are false. The jury found in the instant case, upon sufficient evidence to sustain their finding, that a reasonably prudent person would not have discovered the fraud prior to August 7, 1934. Hence, limitation against the creditors' action to set aside the conveyances would run from that date.

The jury also found in answer to issues submitted that the daughters of Wilke, Sr., to whom said conveyances were made, had, prior to August 7, 1934, held peaceable and adverse possession of said lands "under title or color of title from the State of Texas" for more than three years prior to the filing of this suit. Based upon this finding, and notwithstanding the findings of fraud, and that the creditor could not in the exercise of ordinary care have discovered such fraud prior to August 7, 1934, the court rendered judgment vesting title to said lands in the grantees and quieted their titles thereto against the creditor.

It seems to us paradoxical to say that a deed fraudulent against creditors from its inception, which Arts. 3996 and 3997, R.C.S., declare to be void, and which the creditor may within four years from the date of such deed, or from the date of his discovery of the fraud, have set aside, can as to the grantee who is a recipient of the benefits of such fraud, and without payment by him of a consideration, form the basis of, and sustain, title in him under the three-year statute of limitation (Art. 5507, R.C.S.). Such, however, is the holding as we interpret it, of the Supreme Court in Eckert v. Wendel, supra; Rutherford v. Carr, 99 Tex. 101, 106, 87 S.W. 815, and as applied by us in Watkins Co. v. Gibbs, Tex.Civ.App., 66 S.W.2d 355.

 As above stated, however, if there was never any intention of the parties to the deeds to convey title thereby, they never became effective as conveyances and would not sustain title in the grantees under the three-year statute. Because of the error of the court in refusing to submit these issues the cause must, as to such grantees, be reversed.

The judgment of the trial court in so far as it rendered judgment in favor of Hoerster, as Receiver, against Ernst Wilke, Sr., is affirmed. In all other respects, it is reversed and the cause remanded for a new trial.

Affirmed in part and in part reversed and remanded.