

# THE ATTORNEY GENERAL
# OF TEXAS

PRICE DANIEL
ATTORNEY GENERAL

AUSTIN 11, TEXAS

May 4, 1949

Hon. William J. Murray, Jr., Chairman
Railroad Commission of Texas
Austin 11, Texas

Opinion No. V-823

Re: Time of vesting of limita-
tion title with reference to
subdivision under Rule 37.

Dear Sir:

The question for opinion is contained in
your letter from which we quote as follows:

"As has previously been stated, it
is a Commission policy to grant a first
well on any separate fee tract which ex-
isted prior to the discovery of oil in
the East Texas Field, but that any sub-
division of property subsequent to the
discovery of oil which is in violation
of Rule 37 does not entitle the owner of
the subdivided property to separate de-
velopment. Consequently, the date upon
which a person acquired title to a tract
of land is as important in some cases for
the determination of his right to a well
as is the question of his legal title to
the land.

"Therefore, we wish to ask the ques-
tion as to the date of the acquisition of
title of a tract of land in which title
has matured to the present owner by virtue
of adverse possession. Specifically, we
have Rule 37 case No.38,031 pending, in
which the J.K. Hughes Oil Company, lessee
of a 0.64 acre Pomp Mitchell Heirs tract
in the J. S. Caruthers and Mary Van Winkle
Surveys, East Texas Field, is requesting

a permit for a first well on this tract. It is our understanding that the courts have awarded title to the Pomp Mitchell heirs on this tract by virtue of ten years adverse possession. It is a disputed question of fact as to the date that the adverse possession first began, but for the purpose of this request, we will assume that the adverse possession began in 1929.

"If legal title became vested in the Pomp Mitchell heirs in 1929, then this tract was subdivided prior to the discovery of oil in the East Texas Field, and under our understanding of the law and our established policy, this tract would possibly be entitled to a first well. If, however, legal title did not mature by virtue of adverse possession until the conclusion of the ten year period, which under our assumption would be 1939, the tract was then subdivided after the discovery of oil in the East Texas Field and is not entitled to separate development to prevent confiscation of property since it is a subdivision in violation of Rule 37.

"We, therefore, ask the question, when does title mature as a result of adverse possession; and if different conditions of adverse possession could affect the opinion as to the date of the maturity, then we request an opinion as to the specific circumstances involved in the J.K. Hughes case."

You have also furnished us with your entire file on the application, including the briefs of applicant and protestant. From these and the file, it appears that the question of subdivision is only one of several grounds upon which the application is being contested. In view of this, we wish to make it plain that this opinion is concerned only with the abstract legal question stated in your request for opinion.

As your request for opinion indicates, the time when possession began is a controverted question of fact which we make no attempt to solve. As sug-

gested by you, we merely assume without deciding that the possession which finally culminated in the limitation title began prior to discovery of oil in the East Texas Field.

Although a limitation title does not mature, ripen, or vest until the limitation period is completed (1 Am.Jur.p.797; 2 C.J.S.p.805), nevertheless, once the period is completed, the title relates back to the date possession began. The doctrine of relation back is discussed by Judge Hutcheson in Counce v. Yount-Lee Oil Co., 87 F.2d 572 (CCA.5th, 1937, cert. den.302 U.S.693) from which we quote as follows:

"... The answer is to be more broadly sought and found. It is to be, it is found in the self-evident proposition, that it is a contradiction in terms to say, as the Texas Statutes and most other statutes of limitation do, that the effect of the bar of adverse possession is to give the possessor full title precluding all claims, and to say at the same time, that the possessor shall be liable in damages for his acts of possession done while his inchoate title was being perfected. It is to be found, not only in the terms of the Texas Statutes but in the general theory which underlies prescription, the theory of relation by presumption, the theory that once matured, the title relates back to the beginning of the prescriptive period. Under that theory it is presumed that the origin of the title was rightful, not wrongful, that the possession which has matured it was in support, not in derogation of the rightful title, and that he, who by a possession perfect in the law has matured a title, has in theory of law been the owner of the title from the beginning. There is no place in the theory of prescription or limitation for the contention appellants put forward, that after the title has matured, the former owner of the land can call the limitation owner to account, for any of his actions done, on or to the land, in the course of the unchallenged possession, that has ripened his right and title to it. The princi-

ple of relation is a comprehensive and familiar one in the law of real property. It treats one ousted from possession who has made re-entry, as by relation in continuous possession. Alliance Trust Co. v. Nettleton Hardwood Co., 74 Miss. 584, 21 So. 396, 36 L. R.A. 155, 60 Am. St. Rep. 531. It gives the owner of an inchoate title when his title has ripened, title as from the beginning. Gilbert v. McDonald, 94 Minn. 289, 102 N.W.712, 110 Am. St.Rep. 368. The principle has pecular application to prescription and titles by limitation. It has precise and compelling force in matters of limitation. This is horn book law. 1 R.C.L.p.690; 1 Am. Jurisprudence p.797; 2 C.J. 251. In 'Thompson on Real Property', § 2516 (quoted in Stolfa v. Gaines, 140 Okl.292, 283 P.563,567) the principle is thus stated; 'Adverse possession for sufficient time to bar an action to recover real estate confers title, against any title whatsoever, as effectively as if the original owner had made a formal conveyance to the possessor. The title is as full and complete as if the possessor had always held the undisputed title of record. The rule rests upon the theory that, when possession and use are long continued, they create a presumption of lawful origin; that is, they are founded upon such instruments and proceedings as in law would pass the right to the possession and use of the property.

     " . . .

     "The rule has peculiar force in Texas. The effect of its statutes is to raise an irrebuttable presumption that the person, whose action is barred, has been divested, from the beginning of the adverse possession, of every attribute and incident of title to the land. His title, right, and interest in it have been obliterated, the person whose possession has barred him has taken his place, and holds title by the same chain he held it by direct from the sovereignty of

the soil.  Texas Jurisprudence, vol.2, pp.
14 to 18, inclusive.  Particular cases il-
lustrating the point are:  Burton's Heirs v.
Carroll, 96 Tex. 320, 72 S.W. 581; Eckert
v. Wendel, 120 Tex. 618, 40 S.W.2d 796,
76 A.L.R. 855; MacGregor v. Thompson, 7
Tex. Civ. App. 32, 26 S.W. 649; Goldfrank
v. Young, 64 Tex.432; First Nat'l Bk. of
Alvarado v. Lane (Tex.Civ.App.) 265 S.W.
763; Campbell v. Holt, 115 U. S. 620, 6 S.
Ct. 209, 29 L. Ed. 483; Marshburn v. Stewart
(Tex.Civ.App.) 295 S.W. 679; Grigsby v. Peak,
57 Tex. 142, 143."

See Comment on Counce v. Yount-Lee Oil Co. (supra) in
51 Harvard Law Review 160 (1937).  See generally on the
vesting and effect of limitation title; Ballantine,
Title by Adverse Possession (1918), 32 Harvard Law
Review 135, 142; and Bingham, The Nature and Importance
of Legal Possession (1915), 13 Michigan Law Review,
535, 561, 563 and 627 to 630.

The briefs call attention to a line of
cases dealing with the question of determining the
character of property interest, viz. whether separate,
community, or common, finally acquired by the occupant
in adverse possession at the end of the limitation
period.  Representative of these cases are:  Hutto v.
Cook, 139 Tex. 571, 164 S.W.2d 513 (1942); Sauvage v.
Wauhop, 143 S.W. 259 (Tex. Civ. App.1912, error dism.);
O'Meara v. Williams, 137 S.W.2d 66 (Tex.Civ. App.
1940; error dism., Judgm. cor.); Brown v. Foster Lum-
ber Co., 178 S.W. 787 (Tex.Civ.App.1915, error ref.).

At first glance, these cases seem to deny the
doctrine of relation back inasmuch as they look to the
end rather than the beginning of the period to determine
the type of property interest acquired by the adverse
possessor.  However, the problem involved in each is
determining in whom and in what capacity the limitation
title has matured and the cases neither affirm nor deny
the doctrine that once matured or vested the title
relates back to the time possession began.  Privity
of possession through successive adverse claimants
permits, under our limitation statutes, (Article 5516,
V.C.S.) the occupant in possession at the end of the
period to be vested with the whole title and necessari-
ly the marital or other facts which relate to that

particular adverse claimant must be looked to in
order to determine whether the title so acquired
by him is separate or community, or in common with
others.  See Hutto v. Cook (supra). The determina-
tion of this question is made independently of the
doctrine of relation back.  Having determined by
looking to the end of the period that "A" has ma-
tured the title as his seaprate property does not
mean that "A's" title will not relate back to the
date of the possession which resulted in conferring
the whole title upon "A".

It is our opinion that the doctrine of re-
lation back is one of general application to limi-
tation titles and that it applies for the purpose
of determining the effective date of subdivision un-
der the rules of the Commission.

We believe that this holding is in keeping
with the spirit of the rules laid down by the Com-
mission in connection with our conservation statutes.
The exceptions to Rule 37 were for the purpose of per-
mitting recovery of oil and gas, either to prevent
waste or confiscation, and were designed to permit
rather than impede such recovery.  Brown v. Humble Oil
Co., 126 Tex. 296, 83 S.W.2d 935, 85 S.W.2d 1069 (1935);
Magnolia Pet.Co. v. Blankenship, 85 F. 2d 553 (C.C.A.
5th, 1936, cert. den.299 U.S.608); 31A Tex.Jur.683.
Should we deny the application of the doctrine of re-
lation back to your Subdivision Rule, then necessarily
all titles acquired by limitation but matured, whether
one day or nine years, after discovery of oil within
the area would fall within the Subdivision Rule and
as a matter of law such tracts would be unable to ob-
tain exceptions to Rule 37.  The title finally acquired
by limitation is in legal contemplation a rightful and
valid title (Counce v. Yount-Lee Oil Co., supra, and cases
therein cited) and when initated prior to the
discovery of oil within an area cannot be said to fall
within the vice intended to be remedied by the Subdi-
vision Rule.  Such Rule was designed to prevent cir-
cumvention of the conservation laws by persons volun-
tarily acting or conniving to create subdivisions for
the purpose of applying for exceptions under Rule 37.
Gulf Land Co. v. Atlantic Refining Co., 134 Tex.59,
131 S.W.2d 73 (1939); 31A Tex.Jur.708 and cases
therein cited.  As a general proposition, we think it
evident that the ordinary limitation claimant prior
to discovery of oil within the area had no such inten-

tion.

In addition, in order to mature the limitation title the land concerned must be carved away from the adjacent land and so visibly and openly held under a claim of right as to give notice of the claim. Article 5515, V.C.S. As a condition precedent to perfecting the title, a physical segregation or subdivision of the tract from the land adjacent thereto must occur at the inception rather than the conclusion of the possession.

For all of these reasons, we are of the opinion that a title acquired by adverse possession relates back to the commencement of possession. The date on which the adverse possession begins is the date to be held in determining whether there has been a voluntary subdivision in Rule 37 cases before the Railroad Commission.

## SUMMARY

A title acquired by adverse possession vests at the end of the statutory period but having vested relates back to the commencement of possession. Counce v. Yount-Lee Oil Co., 87 F. 2d 572 (C.C.A. 5th, 1937, cert. den. 302 U.S.693). This doctrine applies for the purpose of determining the effective date of subdivision under the Rules of the Railroad Commission.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By         

H. D. Pruett, Jr.
Assistant

HDP:bt

APPROVED

Price Daniel
ATTORNEY GENERAL