**In re Charles James HARMAN, Alleged Debtor.**

**Bankruptcy No. 99–33788–SAF–7.**

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

Sept. 22, 1999.

See also 39 F.Supp.2d 787.

Michael J. Quilling, Quilling, Selander, et al., Dallas, TX, for Petitioners.

Philip I. Palmer, Jr., Palmer & Palmer, P.C., Dallas, TX, for Respondent.

### MEMORANDUM OPINION AND ORDER

STEVEN A. FELSENTHAL, Bankruptcy Judge.

Houston Goodspeed, Sue Kendrick, John Kendrick, Virginia Moore, Amy Peavy n/k/a Wood, Dave Richardson, Jay Stephenson and Don Timberlake petition this court for the entry of an involuntary order for relief under Chapter 7 of the Bankruptcy Code against Charles James Harman, the alleged debtor. 11 U.S.C. § 303. Harman opposes the petition. The court conducted a hearing on the petition on August 6, 1999. At the request of the parties, the court authorized the filing of post-hearing briefs. The parties filed their briefs on August 16, 1999, and August 25, 1999.

■ The determination of an involuntary bankruptcy petition constitutes a core matter over which this court has jurisdiction to enter a final order. 28 U.S.C. §§ 157(b)(1) and 1334. This memorandum opinion contains the court's findings of fact and conclusions of law. Bankruptcy Rules 7052 and 9014.

On March 12, 1999, the United States District Court for the Northern District of Texas entered eight judgments against Harman in favor of each petitioner for certain statutory damages. *See Goodspeed v. Harman*, 39 F.Supp.2d 787 (N.D.Tex.1999). On May 7, 1999, the District Court entered eight additional judgments against Harman in favor of each petitioning creditor awarding attorneys fees and costs. The judgments total $175,-855.12 plus interest. All 16 judgments have been appealed to the United States Court of Appeals for the Fifth Circuit. Execution has not been stayed. Harman has not posted a supersedeas bond and has not paid the judgments.

On May 25, 1999, the judgment creditors filed this petition. Harman opposes the petition contending that the petitioning creditors are secured and hence not eligible to file this petition and that Harman has been generally paying his debts as they become due.

■ Fully secured creditors may not file an involuntary petition. 11 U.S.C. § 303(b). On May 7, 1999, the petitioning

creditors abstracted their first set of judgments for statutory damages in Dallas County, Texas. On May 12, 1999, they abstracted their second set of judgments for attorneys fees in Dallas County, Texas. On May 25, 1999, they filed this petition.

■ An abstract of judgment constitutes a judgment lien "on real property of the defendant" located in the county in which the abstract has been recorded and indexed. Tex. Prop.Code § 52.001. The judgment lien attaches to property owned by the defendant at the time of the filing or thereafter acquired. *Id.; See, also, Sheldon v. Farinacci,* 535 S.W.2d 938, 940 (Tex.Civ.App.-San Antonio 1976, no writ).

■ On May 7, 1999, and May 12, 1999, Harman only owned real estate that constituted his exempt homestead. On July 17, 1997, Harman formed BPH Properties, Ltd., a Texas limited partnership. Harman and his wife each owned 49.5% of BPH as limited partners. Harman Construction Co., Inc., which Harman owned, was the 1% general partner. On November 3, 1997, the petitioning creditors filed their federal civil suits. On March 3, 1998, Harman and his wife transferred title to all their non-exempt real estate to BPH. Harman testified that the real estate transferred to BPH had a value in excess of $350,000, and was unencumbered. On March 11, 1999, the District Court issued its opinion in favor of the petitioning creditors.

So fraudulent were the transfers that Harman concedes that "not even the O.J. Simpson 'dream team' could salvage the transaction." *Post-trial Brief of Alleged Debtor,* filed August 16, 1999, at 6. Harman contends that as a result the judgment liens should attach to the real estate transferred to BPH. He argues that the petitioning creditors could levy execution on the real estate and sell the property at an execution sale. The purchaser at the sale could then file a trespass to try title suit against the transferee.

Harman relies on *Texas Sand Company v. Shield,* 381 S.W.2d 48 (Tex.1964) and *Eckert v. Wendel,* 120 Tex. 618, 40 S.W.2d 796 (1931) for the proposition that the petitioning creditors could enforce their judgment liens on property conveyed prior to the abstracting of the judgment by the judgment debtor. If that be the case, then the judgment lien must, argues Harman, under Texas law, attach to property fraudulently conveyed prior to the abstracting of the judgment. The Texas Supreme Court in *Texas Sand* explained that *Eckert* established the theory that a conveyance found to be fraudulent as to creditors was void. Necessarily, then, the court reasoned, legal and equitable title remained with the judgment debtor for the purpose of satisfying debts. When a creditor obtains a judgment against the debtor, and properly records and indexes an abstract of the judgment, the creditor acquires a lien upon the land "just as though no transfer had been made." 381 S.W.2d at 54.

■ The Texas Legislature has, however, removed the underpinning of that theory. Texas law now provides that fraudulent transfers are "avoidable," not "void." Tex. Bus. & Com.Code §§ 24.005(a), 24.008(a)(1) and 24.009(a). With the transfer no longer void under Texas law, the rationale of the *Texas Sand* and *Eckert* courts no longer applies. Now, in Texas, legal title does not remain with the debtor and the court cannot assume that the creditor obtains a lien as if the transfer had not been made. Fact, not fiction, now prevails. The transfer had been made. Other than his exempt homestead, Harman had no real property on May 7, 1999, or May 12, 1999, upon which the abstracted judgment could attach a judgment lien.

Under current Texas law, procedurally, the judgment creditor may either bring an avoidance action, Tex. Bus. & Com.Code § 24.008(a)(1), or request that the court order execution on an asset transferred or its proceeds. § 24.008(b). For either, the judgment creditor must obtain judicial re-

lief. No such relief had been granted as of the petition date. Accordingly, procedures for levy and execution do not inform this analysis.

On the petition date, the petitioning creditors were not secured creditors.

BPH reconveyed the property to Harman on June 16, 1999. But with the commencement of the case by the filing of the involuntary petition, a trustee's rights would preempt the abstracted judgments from attaching to the returned property. 11 U.S.C. § 544. The petitioning creditors are therefore eligible to file and prosecute the petition.

An involuntary order for relief may be entered against a debtor if the debtor is "generally not paying" his debts as they become due. 11 U.S.C. § 303(h)(1). Harman testified that but for these 16 judgments, he generally pays his debts when they become due. He argues that these judgments, considered collectively, do not support a finding that he is not generally paying his debts when they become due.

The Fifth Circuit has accepted a bankruptcy court analysis that § 303(h)(1) requires that the court consider both the amount of the debt not being paid and the number of creditors not being paid. *In re All Media Properties, Inc.*, 5 B.R. 126, 142 (Bankr.S.D.Tex.1980), *aff'd*, 646 F.2d 193 (5th Cir.1981). While the court must consider whether Harman is paying a majority of his creditors, the court must also consider the amount of debt of his creditors not being paid.

Although similar circumstances may have given rise to the same causes of action, each petitioner holds separate rights to payment under non-bankruptcy law. Each therefore constitutes a creditor under the Bankruptcy Code. 11 U.S.C. § 101(5), (10). Harman, by virtue of the federal court judgments, is indebted to each of them. 11 U.S.C. § 101(12). Thus, under the Bankruptcy Code Harman has 16 debts owed to 8 holders of claims that he did not pay as of the petition date. The causes of action having been reduced to judgment, the pending appeals to the Fifth Circuit do not alter the analysis of debts at the petition date.

The court may consider the amount, the materiality of the nonpayment and the debtor's overall conduct. Norton Bankr.L. & Prac.2d § 21:11. As of the petition date, the judgments totaled $175,855.12 plus interest. Harman had transferred his non-exempt real property which may have had sufficient value to pay the judgments to a related entity. The amount of the unpaid debt coupled with that pre-petition conduct supports a finding that Harman was not generally paying his debts as they came due as of the petition date, even though he regularly paid his debts other than these 16 judgments. With eight claimants holding judgments from different, albeit similar, transgressions, *Goodspeed, supra,* this case does not present merely a two-party dispute, which might be best left for resolution by a non-bankruptcy court.

Should Harman prevail on appeal, the Bankruptcy Code recognizes that he may file a motion to dismiss the case.

Based on these findings of fact and conclusions of law, the court finds that the petitioning creditors have established that an order for relief should be entered.

Accordingly,

**IT IS ORDERED** that the petition for an order for relief filed May 25, 1999, against Charles James Harman, under Chapter 7 of the Bankruptcy Code (Title 11 of the United States Code), is **GRANTED.**